THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
LOREN E. BANKS II, Defendant-Appellant.

First District (2nd Division)   Nos. 81—2727, 82—2798 cons.

Opinion filed January 17, 1984.—Rehearing denied February 15, 1984.

Steven Clark, of State Appellate Defender's Office, of Chicago, and Carl P. Clavelli, Sherman C. Magidson, and Mary Rosiek, all of Chicago, *pro bono*, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Marie Quinlivan, and Jane E. Liechty, Assistant State's Attorneys, of counsel), for the People.

JUSTICE PERLIN delivered the opinion of the court:

Loren E. Banks II (defendant) was indicted on two counts of murder (Ill. Rev. Stat. 1979, ch. 38, pars. 9—1(a)(1), 9—1(a)(2)) and one count of armed violence (Ill. Rev. Stat. 1979, ch. 38, par. 33A—2). Prior to trial, the court approved the State's motion to *nolle prosequi* the armed-violence count. On October 7, 1981, following a jury trial, defendant was found guilty of the murder of Peter Mazik, Sr. (Mazik). Defendant's motion for a new trial was denied by the trial court, and on October 29, 1981, defendant was sentenced to serve 25 years with the Illinois Department of Corrections.

On November 12, 1981, defendant filed a notice of appeal (case No. 81—2727) challenging his conviction. On January 25, 1982, some three months after sentence was imposed on defendant, the supervisor of the Markham felony trial division of the Cook County State's

Attorney's Office forwarded to defendant's trial counsel a letter containing a memorandum prepared by George Coston, a Cook County sheriff's officer, detailing the officer's recollection of a January 11, 1981, telephone conversation he allegedly had with "Mrs. Mazik." Also enclosed was a memorandum prepared by radio operator Linda Fisher. This information led defendant to contend that his conviction was based, in part, upon the "perjured testimony" of a State's witness, Linda Mazik, deceased's wife. Based upon this alleged newly discovered evidence, defendant, on September 14, 1982, filed a "Petition to Vacate Judgment of Conviction" pursuant to the Post-Conviction Hearing Act (Ill. Rev. Stat. 1979, ch. 38, par. 122—1 *et seq.*) and section 72 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 72), now section 2—1401 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—1401).

On November 10, 1982, a hearing on defendant's petition was held before the same judge who conducted the trial. After Officer Coston testified and argument was presented, the court denied defendant's petition. On November 17, 1982, defendant filed a second notice of appeal (case No. 82—2798), this time from the trial court's denial of his post-conviction petition. Upon defendant's motion in this court, his direct appeal from conviction and his appeal from the denial of his post-conviction petition have been consolidated.

On appeal defendant raises a number of issues including (1) whether the trial court erred in excluding certain evidence offered by him at trial; (2) whether the trial court erred in restricting testimony of an expert defense witness; (3) whether the sequestrating of defendant during a lunch break at trial, prior to the completion of his testimony, amounted to a denial of his right to the effective assistance of counsel; (4) whether certain prosecutorial remarks made throughout the trial deprived defendant of a fair trial; (5) whether the State failed to prove defendant guilty beyond a reasonable doubt; and (6) whether the trial court erred in denying defendant's post-conviction relief. In view of our disposition, for reasons hereinafter set forth, we find it necessary to address only issues 5 and 6.

We reverse the trial court's denial of defendant's post-conviction petition and remand this cause for a new trial.

On January 11, 1981, defendant fatally wounded Peter Mazik, Sr. (Mazik), by shooting him twice in the chest with a .22 derringer. At the beginning of his trial on September 29, 1981, defendant admitted shooting Mazik but claimed that he acted in self-defense. Two guns, the derringer and a .357 magnum, were recovered at the scene at the time of the shooting. Defendant admitted ownership of the derringer

but claimed that Mazik carried the .357 magnum.

The following events were elicited at trial:

Mazik and Alice Banks (Alice), presently the wife of defendant, were divorced in April 1978 after a 12-year marriage. Three children were born of that marriage: At the time of trial, Brenda was aged 14; Karen, aged 10; and Peter, Jr., aged eight. Pursuant to their divorce decree, Mazik remained in the former marital home in unincorporated Orland Park, Illinois, and retained custody of Peter, Jr. In April 1979 Mazik married Linda. Alice retained custody of Brenda and Karen and resided in Rolling Meadows, Illinois. In May 1980 Alice married defendant. Mazik and Alice were granted reciprocal rights of visitation with their children.

Because of the custody and visitation arrangements, Mazik and Alice remained in frequent contact. From August 1979, when Alice first met defendant, to the date of Mazik's death on January 11, 1981, occasional confrontations erupted between Mazik, Alice and defendant. These disputes were generally caused by disagreement over the custody and treatment of Brenda and Karen, the two daughters of Mazik and Alice. During one such dispute on September 16, 1979, a physical struggle between Mazik (6 feet tall, 185 pounds) and defendant (6 feet tall, 115-120 pounds) occurred. Following this altercation Mazik halted Peter, Jr.'s visits to his mother and began legal proceedings seeking permanent custody of his two daughters.

On June 30, 1980, the Rolling Meadows police were called to defendant's home to break up another dispute between Mazik and defendant. Between 1979 and the day Mazik was fatally wounded, Mazik allegedly made several threatening telephone calls to Alice and defendant.

The record indicates that on January 5, 1981, six days before his death, Mazik's custody petition was dismissed by the circuit court.

On January 11, 1981, the night Mazik was killed, Peter, Jr., had been visiting Alice, who at that time was eight months pregnant. Together with Alice's two daughters and defendant, they attended a family gathering at the home of Alice's mother. At the conclusion of the evening, Alice's uncle was expected to accompany Alice to Mazik's home when she returned Peter, Jr.[1] However, Alice's uncle was

---

[1]Generally, a friend or relative would accompany Alice to Mazik's home which was about an hour's drive from her home. Defendant seldom accompanied Alice on these drives because he feared a confrontation with Mazik. On one occasion when defendant did accompany Alice a van, similar to one owned by Mazik and allegedly bearing Mazik's license plate number, appeared to defendant and Alice to be chasing them and attempting to run them off the road.

unavailable for this purpose, and defendant accompanied Alice on the drive to Mazik's home. Defendant admitted to drinking 1½ cans of beer during the drive to Mazik's home.

The testimony regarding the events that transpired upon their arrival at Mazik's home is unclear and conflicting. Peter, Jr., testified to the following:

Upon arriving at the Mazik house, Alice exited the car, leaving the motor running. Peter, Jr., exited the back seat and began removing his Christmas presents. Defendant remained seated in the front passenger seat. Linda Mazik, the victim's wife, had been walking her dog. She approached the car to help carry Peter, Jr.'s presents into the house. Peter, Jr., noticed his father standing on the "deck" of the house. Peter, Jr., then saw Mazik walking towards the car. He could see Mazik's hands as Mazik approached but observed nothing in them. When Mazik reached the front passenger side of the car where defendant sat, Mazik opened the door "halfway." Looking through the front driver's side window, Peter, Jr., could see only Mazik's head and the back and arms of defendant. Peter, Jr., denied seeing Mazik reach into the car and grab defendant by his clothing.

Peter, Jr., stated that after Mazik opened the car door, "Loren [defendant] shot him." Although unable to see Mazik, Peter, Jr., testified that Mazik was on the ground and "was starting to get up and then [defendant] shot him again." After the second shot, defendant ran around the side of the car and "told us to go *** call an ambulance." As he came around the car defendant was holding a gun in his left hand (later identified as a .357 magnum). After the shooting, Peter, Jr., went into the house with Linda Mazik.

Linda Mazik, the victim's wife, testified to the following:

On the night of January 11, 1981, she was walking her dog when defendant, Alice and Peter, Jr., drove into her driveway. She approached the driver's side of the car to help carry Peter, Jr.'s Christmas presents into the house. As she was helping with the presents, she heard the storm door of the house "slam" and, "out of the corner of her eye," she saw Mazik come out of the house "pretty fast." Although it was "very dark," the area was illuminated by a driveway spotlight and the headlights of Alice's car. Linda could see Mazik across the top of the car on the passenger side but stated that she "wasn't really paying a lot of attention." Linda next heard a gunshot. She looked over the car but could not see Mazik; she looked through the driver's side front window and saw defendant "getting out of the car and [she] heard another shot." Defendant then came around the car and said: "Somebody call the police." Linda stated that defendant

also said "you might as well get an ambulance." Linda and Peter, Jr., went into the house and she telephoned the police.

During cross-examination, Linda was asked to describe the guns normally found in her house. These included a .41 pistol, a silver derringer, a deer rifle and three shotguns. Linda, however, denied that her husband owned a .357 magnum pistol or that such a gun or ammunition for such a gun were ever in her home. She also stated that Mazik had been drinking beer during the day of January 11, 1981, but that she did not know in what amount.

Cook County sheriff's officer Alan Kulovitz, an evidence technician, testified that he recovered a black holster from the floor of the front passenger side of Alice's car. The holster was free of moisture although there was snow on the ground near the car. Officer Kulovitz opined that the .357 magnum pistol found at the scene fit the holster. He did not know how the holster came to be on the floor of the car and he could not say whether others handled the holster or the .357 magnum between the time of the shooting and his arrival on the scene. Officer Kulvitz acknowledged that he made no effort to determine the ownership of the .357 magnum or to obtain fingerprints from that gun.

Following this testimony and the placing in evidence of the gun and holster, the State rested. Defendant's motion for directed verdict was denied.

Alice Banks testified that she had warned defendant of Mazik's reputation for violence and that Mazik owned "quite a few guns" and "always carried a gun on his person." She stated that during her marriage to Mazik he purchased a .357 magnum and kept it under the mattress of their bed. Alice stated further that at no time during the drive to the Mazik house did she see a .357 magnum in the Banks' automobile.

In his own defense, defendant testified to the following:

He shot Mazik in self-defense after Mazik "reached for a gun" which defendant saw under Mazik's coat. Defendant identified People's exhibit No. 1, a .357 magnum, as the gun Mazik carried under his coat at the time of the shooting. Defendant denied ownership of the .357 magnum or that he had brought the gun with him to Mazik's home.

When defendant, Alice and Peter, Jr., arrived at Mazik's house on January 11, 1981, defendant remained in the car. He saw Mazik "running" toward the car and he "figured he [Mazik] was coming to kill" him. As Mazik approached, defendant placed his derringer "underneath his right leg." Mazik then opened the car door and grabbed

defendant's collar with both hands. Mazik started to pull defendant out of the car but defendant struck his head on the interior of the car roof, knocking him back into the seat. At that time defendant saw that in Mazik's right hand, "in the area of his belt was the butt end of a revolver." "Believing" that Mazik intended to kill him, defendant shot Mazik with his derringer and both he and Mazik fell to the ground. They struggled. Defendant "felt he was losing" the struggle. He saw Mazik's gun aimed at him and he heard the hammer of the gun "click back." Defendant shot Mazik again with his derringer.

Following the second shot, defendant stood up holding the .357 magnum in his left hand and told Linda to call for an ambulance and police. He then followed Alice to a neighbor's house where Alice called an attorney. Defendant waited for police to arrive and was immediately arrested.

Following this testimony, closing arguments were presented, the jury was instructed and retired to deliberate. Defendant asserts that the jury deliberated more than nine hours. Twice during that time the jury notified the court that it was unable to reach a verdict. However, the jury continued to deliberate and finally returned a verdict finding defendant guilty of murder.[2] On October 21, 1981, defendant moved for a new trial which the trial court denied on October 29, 1981. Defendant was sentenced to serve 25 years with the Illinois Department of Corrections.

Almost three months after defendant filed his notice of appeal on November 12, 1981, his trial attorney received the January 25, 1982, letter from the State's Attorney's office enclosing a memorandum that had been prepared by Officer George Coston at the request of the internal affairs department of the office of the Cook County sheriff. The memorandum summarized Officer Coston's recollection of a January 11, 1981, telephone conversation which he allegedly had with "Mrs. Mazik." A second memo prepared by radio officer Fisher corroborated Coston's receipt of the telephone call and the fact that Coston mentioned a .357. A copy of the State's Attorney's letter was not forwarded by trial counsel to defendant's appellate counsel until July 14, 1982.

On September 14, 1982, defendant filed a "Petition to Vacate Judgment of Conviction." At a November 10, 1982, hearing on defendant's petition, Officer Coston testified to the following:

---

[2]The record does not indicate whether the jury was further instructed by the court. The record reflects only that the jury continued deliberations until it reached a verdict.

On November 12, 1981, after he had read a newspaper account of defendant's conviction and sentence, he prepared a "memorandum report" addressed to Major Lowthorp summarizing his recollection of a telephone conversation he had on January 11, 1981, while he was at work in the communications room of the Cook County sheriff's office in Maywood.

At 9:18 p.m. that evening he received a telephone call from a woman who identified herself as "Mrs. Mazik."

"Mrs. Mazik told me that her husband was outside. She believed he had been shot, and he—I asked her exactly what happened and she stated that, what I believed at the time to be her ex-husband and her present husband, that they had some sort of argument out there, and what I believe to be the ex-husband shot her present husband at least twice.

I immediately dispatched a squad car to the scene and also transmitted on the ISPERN directly to the Orland Park unit in the area close to Orland Park Town."

Officer Coston stated that he "insisted" that the caller remain on the telephone and he questioned her further about the incident. He asked her if there were any guns involved and "if her husband had a gun." The woman responded she "believed he did." In response to his question as to the kind of gun, "she said a revolver. A magnum, I think. I think a .357 is what she said." Officer Coston then asked "Mrs. Mazik" if she knew where her husband kept "this gun." He asked her to see if the gun was in place. At the November 10, 1982, hearing the following colloquy took place between defendant's counsel and Officer Coston:

"Q. Did she then leave the phone for a period of time?

A. No, it sounded to me at the time that she was hanging onto the phone. I heard some background noises, and she came almost immediately back to the phone, back on the line, and told me that the gun was not there. I asked her—Well, if there were any other weapons in the house, any guns. She said there were a number of guns, or something to that effect. That there were more weapons in the house."

Officer Coston then by radio informed the officers en route to the Mazik house that "both subjects [were] possibly armed."

Officer Coston acknowledged that he made no report at the time of his conversation with "Mrs. Mazik." Tape recordings of calls coming into the communications room are preserved for only three months.

On cross-examination, Officer Coston admitted that he could not

at the time of the hearing recognize Mrs. Mazik's voice and that he had never heard her voice before January 11, 1981. He stated that although he may have erred "on some points" in recalling the conversation, he "believe[d] that generally [his] recall is fairly good about it."

Predicated on Officer Coston's testimony, defendant contended that because at trial Linda Mazik denied ever having seen a .357 magnum in her house, her testimony was "perjured." Defendant argued that the State in its closing argument at trial had acknowledged that "the key to the case" was the .357 magnum which the prosecutor asserted was brought to the scene by defendant as a "backup weapon." Defendant also noted that the trial judge, in denying defendant's posttrial motion on October 21, 1981, had stated that "the jury discounted that theory [self-defense] *** or they would not have found him guilty of murder."

Following argument, the trial court on November 10, 1982, denied defendant's petition to vacate the judgment stating:

"*** with any diligence at all the defense counsel who tried this case initially could have discovered this information and it could have been produced at trial.

*  *  *

There has been no showing here that the testimony produced at the trial was, in fact, perjured. There hasn't been anything other than—no other testimony produced at this hearing to justify or to satisfy the requirement of setting this judgment aside."

On November 17, 1982, defendant filed a notice of appeal from the trial court's November 10, 1982, order denying his post-conviction relief. The direct appeal of defendant's conviction and his post-conviction appeal have been consolidated.

I

For the reasons hereinafter set forth, we propose to reverse and to remand this cause for a new trial. To forestall any risk of subjecting defendant to double jeopardy, as suggested by our supreme court in *People v. Taylor* (1979), 76 Ill. 2d 289, 391 N.E.2d 366, we address defendant's contention that the evidence at trial was insufficient to support the jury's verdict.

The evidence in the case at bar is in our opinion conflicting and not overwhelming. It is well established in Illinois that where testimony is conflicting, the resolution of such conflict is for the jury as the trier of fact. (*People v. Smylie* (1981), 103 Ill. App. 3d 679, 690, 431 N.E.2d 1130.) The jury may accept all, part or none of the evi-

dence presented at trial, and its determination should not be disturbed upon review unless it is so contrary to the evidence as to raise a reasonable doubt of defendant's guilt. *People v. Seiber* (1979), 76 Ill. App. 3d 9, 13, 394 N.E.2d 1044.

In finding defendant guilty of murder, based on the conflicting evidence submitted to it, the jury in this case obviously rejected defendant's account of the events of January 11, 1981. It is apparent that the jury did not accept defendant's testimony that Mazik possessed the .357 magnum and that defendant acted in self-defense.

Our review of the record persuades our conclusion that, if believed by the jury, the evidence received by the jury at trial was sufficient to support its verdict.

## II

We find more difficult, however, acceptance of the trial court's rationale in denying defendant's post-judgment petition predicated, in part, upon section 72. Defendant's petition contended that the evidence discovered several months after defendant was convicted and sentenced, *viz.*, the memorandum of Officer Coston and his testimony, indicated that defendant's conviction was possibly based upon the "perjured testimony" at trial offered by Linda Mazik.

It is well established that "[s]ection 72 affords a remedy to obtain relief, where warranted, from a judgment based on perjured testimony." (*People v. Hilliard* (1978), 65 Ill. App. 3d 642, 645, 382 N.E.2d 441; *People v. Berland* (1978), 74 Ill. 2d 286, 316, 385 N.E.2d 649.) "A section 72 proceeding is the forum in which 'to correct all errors of fact occurring in the prosecution of a cause, unknown to the petitioner and court at the time of trial, which, if then known, would have prevented the judgment.'" (*People v. Berland* (1978), 74 Ill. 2d 286, 313-14.) In order for defendant to avail himself of section 72 relief, "he must not only show adequate grounds for relief exist, but also that, through no fault or neglect of his own, the error of fact *** was not made to appear at the trial." *People v. Stewart* (1978), 66 Ill. App. 3d 342, 347, 383 N.E.2d 1179.

Thus, defendant's petition in the instant case raises two questions: whether the information received by defendant from the State's Attorney's office provided him with "adequate grounds for relief" and whether such information could have been "made to appear at trial" by defendant.

On October 7, 1981, defendant was found guilty of the murder of Peter Mazik, Sr. On October 29, 1981, he was sentenced to 25 years imprisonment. On October 30, 1981, the article which allegedly stirred

Officer Coston's belated recollection of the January 11, 1981, telephone conversation with "Mrs. Mazik" appeared in the "Daily Southwest Suburban Economist" newspaper. On November 12, 1981, Officer Coston prepared a memorandum for the internal affairs division of the Cook County sheriff's department detailing his recollection of the January 11, 1981, telephone conversation with "Mrs. Mazik."

On January 25, 1982, the supervisor of the Markham felony trial division of the Cook County State's Attorney's office forwarded to defendant's trial counsel a letter enclosing a copy of Officer Coston's memorandum. The supervisor's letter stated that "[t]he information contained in the memo was not known until after the sentencing of Mr. Banks." Some six months later this information was forwarded by defendant's trial counsel to his court appointed appellate counsel, and on September 14, 1982, defendant's section 72 post-conviction hearing petition was filed.

Following Officer Coston's testimony and counsels' argument at the November 10, 1982, post-conviction hearing, the trial court denied defendant's petition. The court concluded that "with any diligence" defendant's initial trial counsel could have "discovered this information and it could have been produced at trial."

Our review of this record does not compel agreement with the trial court's conclusion that defendant's trial counsel lacked diligence in this matter. In his January 25, 1982, letter to defendant's counsel, the assistant State's Attorney acknowledged that "the information contained in the memos was not known until after the sentencing of Mr. Banks." In view of the fact that defense counsel was not privy to the operation of the internal affairs division of the Cook County sheriff's department and had no way of knowing that an Officer Coston existed and possessed knowledge pertinent to this case, there is assuredly no reason to believe that even the most diligent defense counsel could have unilaterally uncovered this information prior to trial.

Generally, the determination of a trial judge in post-conviction proceedings will, in the absence of manifest error, be upheld. (*People v. Bracey* (1972), 51 Ill. 2d 514, 517, 283 N.E.2d 685.) Where, however, such error is suggested by the record, a court of review should not and will not hesitate to set aside the determination of the trial court.

At trial in this case, the ownership of the .357 magnum revolver was key to defendant's claim of self-defense. This was acknowledged by the prosecution during trial and by the trial court during the post-trial hearing. Defendant testified that Mazik reached under his coat for a gun, identified as the .357, allegedly causing defendant to act in

claimed self-defense. Linda Mazik, however, denied that her husband owned such a gun. She testified that she had never seen that gun until the night of Mazik's death. Defendant's wife, Alice, the victim's former wife, testified that while she was married to Mazik he had purchased a .357 and kept it under the mattress of their bed.

Officer Coston's testimony, if available at trial and heard by the jury could conceivably, if believed by the jury, have supported defendant's argument and weighed heavily against Linda Mazik's credibility. Her denial that Mazik owned a .357 magnum, and Peter, Jr.'s testimony that he did not observe anything in Mazik's hands the night Mazik was killed, is all that controverts defendant's claim that Mazik had a gun under his coat and Alice's testimony that Mazik had in fact owned such a gun. Although undoubtedly each party who testified at defendant's trial had a personal interest in the outcome of the proceedings, it is apparent that Officer Coston would have had no such personal interest. "The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest in testifying falsely that a defendant's life or liberty may depend." *Napue v. Illinois* (1959), 360 U.S. 264, 269, 3 L. Ed. 2d 1217, 1221, 79 S. Ct. 1173, 1177.

A careful review of both the trial record and the post-conviction hearing record leads us to conclude that Officer Coston's memorandum and the evidence presented at the November 10, 1982, hearing was sufficient to raise reasonable doubt of the veracity and accuracy of Linda Mazik's trial testimony as contrasted with that of defendant. Because it is not, in our opinion, possible with certainty to speculate on the effect which Officer Coston's memorandum and testimony could have had on the trial jury's deliberations in this case, we believe the ends of justice would be better served by remandment of this cause for a new trial.

For the reasons herein stated, the judgment of the circuit court of Cook County is reversed and the cause is remanded for a new trial.

Reversed and remanded.

HARTMAN, P.J., and DOWNING, J., concur.