THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DAN GRAY *et al.*, Defendants-Appellants.

Third District    No. 3—86—0235

Opinion filed March 2, 1988.

Spiezer, Thorsen & Ellerby, of Rockford (Joseph P. Spiezer, of counsel), for appellants.

Gary L. Spencer, State's Attorney, of Morrison (Edward P. Morrissey, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE BARRY delivered the opinion of the court:

Defendants Dan Gray and Doreen Morehead were convicted of nine counts of delivery of controlled substances following a jury trial in the circuit court of Whiteside County. Gray was sentenced to 10 years in the penitentiary, and Morehead was sentenced to 30 days in the penitentiary followed by four years' probation. On appeal, defendants seek a new trial.

Stated briefly, the evidence at trial disclosed that Timothy Buckley acted as a "confidential source" for the Illinois Department of State Police from October 16, 1984, to October of 1985, during which time he made approximately 80 buys of illegal drugs under controlled situations. As to the transactions involving Gray and Morehead, the procedure used was as follows: Buckley would meet an officer who would drive him to a prearranged location. The officer would search Buckley and then would provide him with funds to use in buying

drugs. Under observation of two officers, Buckley would proceed to the Morehead house at 303 West 12th Street, Rock Falls, Illinois, where he would enter the back door and return the same way some five minutes later. Buckley was then transported by an officer back to the prearranged location, where he was again searched. After each transaction, Buckley would produce controlled substances (*e.g.*, LSD or cocaine) and would no longer have the money. Buckley was the only witness to the identity of the drug suppliers. These drug buys took place between April 5 and July 10, 1985.

Morehead testified that she had a lot of visitors in her home and that Buckley had visited there some 40 times between April and October of 1985. A search of the premises disclosed two grams of cannabis and a letter from defendant Gray. One police officer testified that she recognized Gray as a person who arrived at Morehead's house during one of the controlled buys. Defendants stipulated to the results of the laboratory tests of the drugs obtained by the State from these transactions.

A few days after the jury returned its verdict of guilty in this cause, the police were interviewing Buckley in the course of preparing for trial of another case against one Harold Barnes. Barnes had produced an alibi for the dates of the alleged drug transactions (August 7 and 22, 1985), and Buckley admitted that he had lied to the police earlier and that in fact he did not purchase the drugs from Barnes on those occasions. The State thereafter dismissed the remaining drug cases involving Buckley, and charges of obstructing justice in the Barnes case were filed against him to which he ultimately entered a plea of guilty.

In the case at bar, defendants filed a post-trial motion, alleging, *inter alia*, that the newly discovered evidence of Buckley's prevarication to authorities entitled defendants to a new trial. The parties stipulated that Buckley's later statement concerning the Barnes transaction is inconsistent with the notes made by an officer at the time of the Barnes transaction. The trial court denied defendants' motion for a new trial, and this appeal followed.

■ The rule in Illinois governing the granting of a new trial on the basis of newly discovered evidence has been stated as follows:

> " 'To warrant a new trial, the new evidence must be of such conclusive character that it will probably change the result on retrial, that it must be material to the issue but not merely cumulative, and that it must have been discovered since the trial and be of such character that it could not have been discovered prior to trial by the exercise of due diligence.' " (*People v.*

*Molstad* (1984), 101 Ill. 2d 128, 134, 461 N.E.2d 398, 402, quoting *People v. Baker* (1959), 16 Ill. 2d 364, 374, 158 N.E.2d 1, 6.)

Here the trial court found that the attorney for defendants had exercised due diligence in discovering the evidence, but a new trial was denied on the ground that the evidence was merely cumulative of other evidence tending to impeach Buckley's testimony.

A review of the many cases cited to us by the parties to this appeal demonstrates conclusively that newly discovered evidence can justify the grant of a new trial *only* when that evidence directly concerns the crime for which defendants were convicted. When the newly discovered evidence relates to the credibility of a party or other witness, it has been held either not material to the issue of guilt or not so conclusive as to affect the result or, as here, merely cumulative of other evidence going to the credibility of the witness. It is not disputed that Buckley has admitted lying about two drug transactions occurring after the ones for which defendants were convicted and that he has been convicted for obstructing justice in those cases. Further, it is not disputed that Buckley's admissions and conviction have nothing to do with the case at bar. Thus, if this case were retried, the new evidence could be used only for the purpose of impeaching the State's witness and not to prove defendants' innocence.

In *People v. Molstad* (1984), 101 Ill. 2d 128, 461 N.E.2d 398, the defendant and four codefendants were convicted of aggravated battery and criminal damage to property arising out of a gang attack upon a car and its driver. The assailants used baseball bats and lead pipes to demolish the car and severely injure the driver, supposedly in retaliation for an earlier fight between the driver and a friend of the defendant's. Molstad testified in his own behalf that he had gone home to bed before the attack, and his testimony was corroborated by his parents. A fifth codefendant was acquitted. In his motion for a new trial, Molstad presented affidavits from his five codefendants stating that Molstad was not present at the time of the attack on the victim and his automobile. The supreme court ruled that a new trial should be granted because the testimony of the codefendants goes to the ultimate issue of whether Molstad was present during the attack and would be likely to change the result of the trial. The court also noted that this evidence was not available earlier because the codefendants could not have been forced to incriminate themselves by admitting that they were present. Unlike the *Molstad* case, in the case at bar defendants' so-called new evidence, *i.e.*, evidence that Buckley lied to the police in other cases, is not direct evidence that they were

not present at the time of any of the transactions involved in their convictions.

In another case relied upon by defendants, *People v. Upshaw* (1965), 58 Ill. App. 2d 256, 207 N.E.2d 728, the defendant was convicted of the armed robbery of a service station attendant who identified defendant as the robber. Defendant denied being present in the service station that night, and his brother-in-law corroborated his alibi. In a post-trial motion, the defendant asserted that he had located another witness to the robbery who would testify that the defendant was not the man who committed the crime. The trial court granted defendant's motion for a new trial since the newly discovered witness would be able to testify to the primary issue—the identity of the assailant. Unlike the *Upshaw* case, Gray and Morehead, defendants here, have no new evidence by an eyewitness to show that someone else committed the crimes for which they have been convicted.

Another case discussed by defendants is *People v. Banks* (1984), 121 Ill. App. 3d 279, 459 N.E.2d 992, where the defendant was convicted of murder in the shooting death of his wife's former husband. The defendant Banks admitted firing the shots that killed the victim, but he stated that the shooting was in self-defense when he saw the victim reach for a .357 magnum pistol under his coat. Banks said he shot the victim with his own derringer, and then picked up the magnum from the ground before telling the victim's wife to call the police. The victim's wife testified that the victim did not own a .357 magnum, and Banks' wife testified that the victim had purchased such a gun during their marriage and that he kept it under the mattress of their bed. In a petition for post-conviction relief filed under the Post-Conviction Hearing Act (Ill. Rev. Stat. 1979, ch. 38, par. 122—1 *et seq.*), defendant Banks sought a new trial on the ground that he had newly discovered evidence demonstrating that the victim's wife had lied on the witness stand. This evidence consisted of testimony of the police officer who received the call from the victim's wife the night of the crime. In the course of the telephone conversation, the wife told the officer that her husband had a .357 magnum gun which was not in the place where he usually kept it. The reviewing court held that section 72 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 72) affords a remedy where a judgment was based on perjured testimony, that ownership of the .357 magnum was a key to the defendant's claim of self-defense, and that the police officer's testimony was sufficient to raise a reasonable doubt as to the veracity and accuracy of the trial testimony of the victim's wife. Of course, this new evidence was direct evidence of a prior statement by an eyewitness which con-

tradicted her trial testimony. Unlike the *Banks* case, defendants in the case at bar have no direct evidence that would contradict any of the trial testimony against them.

Illinois courts have declined to grant a new trial where new evidence is discovered which merely discredits a witness or which impeaches a witness without establishing that the witness committed perjury while on the witness stand. *People v. Johnson* (1978), 60 Ill. App. 3d 183, 376 N.E.2d 381 (the trial court relied upon the rule that newly discovered evidence which merely discredits a witness is not a ground for a new trial). Accord *People v. Wolfe* (1970), 124 Ill. App. 2d 349, 260 N.E.2d 424; *People v. Johnson* (1970), 123 Ill. App. 2d 69, 259 N.E.2d 621.

Illinois courts have recognized the difference between evidence which impeaches a witness and that which alters the proof of elements of the crime. The supreme court said:

> "A distinction is to be drawn between evidence which impeaches a witness in the sense that it affects the credibility of the witness, and evidence which is probative in that it presents a state of facts which differs from that to which the witness testified. Newly discovered evidence, the effect of which is to discredit, contradict and impeach a witness, does not afford a basis for the granting of a new trial. If, however, it contradicts a witness by showing facts, a new trial may be ordered when it appears that such new evidence has sufficient probative force or weight to produce a result different from that obtained at the trial which has been had." (*People v. Holtzman* (1953), 1 Ill. 2d 562, 568, 116 N.E.2d 338, 341, quoted with approval in *People v. Wicks* (1973), 15 Ill. App. 3d 318, 322, 304 N.E.2d 134, 137.)

In the *Wicks* case, the newly discovered evidence was a witness who quoted the complaining witness as saying she was going to involve defendant in the case if she did not get the money she wanted. It was held that this evidence affected only the credibility of the complaining witness, and since that was already before the jury because of trial testimony of other witnesses, the new evidence was substantially cumulative. The same is true in the case before us here.

The case at bar closely resembles those cases where the credibility of the complaining witness is undermined by some evidence newly discovered after the trial. Illinois cases are unanimous in holding that such impeachment evidence cannot be the basis for a new trial. If this were not the rule, the appellate courts would be overwhelmed with post-trial petitions seeking relief because one of the State's witnesses

at some later time was convicted of a crime which could be used to impeach the witness upon retrial. Of course, if defendants could offer any evidence that Buckley lied at their trial, the outcome of this appeal would be different. There is not one shred of evidence to indicate that these defendants did not sell Buckley the drugs for which they were convicted. Buckley has not recanted his testimony. Consequently, the trial court did not abuse its discretion in denying the motion for new trial.

■ Defendants also claim that the trial court erred in refusing to grant a mistrial when a police officer improperly commented on the post-*Miranda* silence of defendants. Officer Kerns, a witness for the State, testified that during a search of the Morehead house a letter written by Mr. Gray was found on a table which listed as a return address "303 West 12th Street, Rock Falls, Illinois." In the course of cross-examination, defense counsel asked, "Did you ever ask either Miss Morehead or Mr. Gray about that letter?" Officer Kerns responded, "They both indicated to me that they did not wish to speak to me after *Miranda* rights had been given." The trial court denied defendants' motion for a mistrial and admonished the witness. The court offered to instruct the jury to disregard the officer's answer, but the defendants did not want that done.

It would be, of course, improper for the State to elicit evidence of a defendant's election to remain silent after receiving the *Miranda* warnings. (*Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240.) However, here the information was given as an answer to a question by defense counsel during cross-examination. The State is not responsible for questions asked by defense counsel on cross-examination or for the answers given by the State's witness. (*People v. Burris* (1971), 49 Ill. 2d 98, 273 N.E.2d 605.) If a defendant procures or invites the admission of evidence that is improper, he or she cannot complain. (*People v. Peter* (1973), 55 Ill. 2d 443, 303 N.E.2d 398; *People v. Burage* (1961), 23 Ill. 2d 280, 178 N.E.2d 389.) We do not consider the trial court's refusal to grant a mistrial to have been erroneous.

■ The final assignment of error by defendants is that the trial court erred in refusing to grant a mistrial when the State presented identification testimony that had not been disclosed to defendants in response to their pretrial requests for discovery. Officer Paula Vercillo testified at trial that she observed defendant Gray enter the house at 303 W. 12th Street when Tim Buckley was present during one of the controlled buys on July 10, 1985. Defendants say that the written report of Officer Vercillo supplied to them before trial did not refer to

Gray's arrival and only mentioned seeing a female outside. Defendants contend that the State's failure to disclose this testimony identifying Gray at the scene was prejudicial. In order to establish a due process violation occurring when a prosecutor suppresses evidence material to the question of guilt, the defendant must show (1) that the evidence was favorable to him, (2) that the prosecutor failed to disclose the evidence in response to a specific request, and (3) that the evidence was material. (*People v. Velez* (1984), 123 Ill. App. 3d 210, 462 N.E.2d 746.) It is quite clear in the case at bar that the undisclosed evidence was not favorable to defendants. Hence, it was not error to refuse a mistrial for failure to disclose evidence to defendants.

Accordingly, the judgment of the circuit court of Whiteside County is affirmed.

Affirmed.

HEIPLE and SCOTT, JJ., concur.