The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Rodolfo Eliseo CHAVEZ, Defendant–Appellant.

No. 05CA2392.

Colorado Court of Appeals, Div. II.

Dec. 27, 2007.

As Modified on Denial of Rehearing Feb. 14, 2008.

Certiorari Denied Aug. 18, 2008.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2007.

John W. Suthers, Attorney General, Susan E. Friedman, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Ned R. Jaeckle, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge J. JONES.

Defendant, Rodolfo E. Chavez, appeals the judgment of conviction entered on jury verdicts finding him guilty of possession with intent to distribute cocaine, possession of more than one gram of cocaine, possession with intent to distribute marijuana, and possession of eight ounces or more of marijuana. We affirm.

## I. Background

On August 7, 2003, two Denver police officers went to an apartment building located at 2205 Larimer Street in response to a tip from an anonymous informant describing possible narcotics trafficking in and around the building. The informant described a person by the name of "Rodolfo" who lived in the apartment building, and whom the informant indicated was selling marijuana and cocaine. The officers arrived in a marked patrol car and parked down the street from the building to watch for illegal drug activity.

At about 2:00 a.m., the officers saw a car park in front of the building. A woman got out of the car and walked into the building. A short time later, she exited the building with two men, one of whom (defendant) matched the description of "Rodolfo" given by the informant. The officers saw defendant hand something to the other man in a manner consistent with a narcotics transaction. They quickly approached the group to investigate further, and while doing so, saw the other man attempt to discard a small plastic bag of cocaine. The officers arrested defendant, the other man, and the woman, and advised each of them of their rights pursuant to *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

The officers testified at trial that upon questioning the two men, defendant gave his name and said he lived in Apartment 211 in the building. The officers further testified that defendant said he and the other man had been drinking in defendant's apartment and came downstairs to meet the woman

from the vehicle. According to one of the officers testifying in rebuttal, when he asked defendant for his consent to search the apartment, defendant refused.

The officers obtained a search warrant and searched Apartment 211. They found $600 in cash in the bedroom, and mail addressed to defendant. In the kitchen they found two scales, a box of plastic baggies, 13.932 grams of cocaine (in a Kool–Aid can), and approximately three pounds of marijuana. The marijuana was found in two separate locations in the kitchen: in the freezer and on a plate in a cabinet. A picture of defendant was also on the plate. The plate was next to the Kool–Aid can containing the cocaine.

Defendant testified at trial that he had moved out of the apartment six days before his arrest, was allowing the other man to live there temporarily pursuant to an unwritten sublease, had not been inside the apartment since he moved out, had not entered the apartment on the night of the arrest, and did not know there were illegal drugs in the apartment. He also maintained that when questioned by the officers at the time of his arrest he gave only his name, did not tell them he lived in Apartment 211, and when asked for his consent to search the apartment, he said nothing.

A jury found defendant guilty of (1) one count of possession with intent to distribute cocaine, in violation of section 18–18–405(1), (2)(a)(I)(A), C.R.S.2007; (2) one count of possession of more than one gram of cocaine, in violation of section 18–18–405(1), (2)(a)(I)(A), C.R.S.2007; (3) one count of possession with intent to distribute marijuana, in violation of section 18–18–406(8)(b), C.R.S.2007; and (4) one count of possession of eight ounces or more of marijuana, in violation of section 18–18–406(4)(b)(I), C.R.S.2007. The court sentenced defendant to ninety days in the county jail and two years of probation.

## II. Evidence of and Comment on Defendant's Refusal to Consent to a Search

Defendant contends that the district court erred by allowing testimony that he refused to consent to a search of the apartment and

by allowing the prosecutor to argue in closing and rebuttal closing argument that his refusal to consent was evidence that he knew illegal drugs were in the apartment. He argues he was effectively penalized for exercising a constitutional right—specifically, his Fourth Amendment right to be free from unreasonable searches—and that his right to due process under both the United States and Colorado Constitutions was thereby violated. *See* U.S. Const. amends. V, XIV; Colo. Const. art. II, § 25. In the alternative, he argues the evidence of his refusal to consent to a search was inadmissible because it was irrelevant or because its probative value was substantially outweighed by the danger of unfair prejudice. *See* CRE 402, 403. We disagree with both of defendant's arguments.

### A. The Testimony and the Prosecutor's Argument

During cross-examination of defendant, the prosecutor questioned him about his encounter with the police officers outside the apartment, and the following exchange took place:

PROSECUTOR: The cops came up and talked to you?

MR. CHAVEZ: Yes, sir.

PROSECUTOR: They gave you what you called your Miranda warnings, correct?

MR. CHAVEZ: That's correct.

PROSECUTOR: They asked you to search your apartment?

DEFENSE COUNSEL: Your Honor, I believe it's critical we approach the bench at this time.

THE COURT: Denied. Answer the question.

PROSECUTOR: They asked you to search your apartment?

MR. CHAVEZ: They asked if they could search the apartment.

PROSECUTOR: You told them no.

DEFENSE COUNSEL: I have a motion to make at this time, Your Honor.

THE COURT: Make it later, Counsel, at the break.

DEFENSE COUNSEL: Your Honor, I believe it's imperative.

THE COURT: Counsel, please have a seat. You are interrupting the flow of the trial.

DEFENSE COUNSEL: I haven't interrupted. This is a critical issue, Your Honor.

THE COURT: You can make your motion later.

PROSECUTOR: The question was, you didn't allow them to search your apartment?

MR. CHAVEZ: They asked me a number of questions. I invoked my right to remain silent as upon their advice.

PROSECUTOR: Before you said anything about that, after they gave you Miranda, you said they asked you to search your apartment.

DEFENSE COUNSEL: The question has been asked and answered, Your Honor.

THE COURT: Overruled.

PROSECUTOR: They asked you if they could search your apartment, correct?

MR. CHAVEZ: Yes, sir.

PROSECUTOR: And you said no?

MR. CHAVEZ: I didn't give them any reply. I invoked my right to remain silent.

The court subsequently allowed defendant's counsel to make a record on his objections. Defendant's counsel moved for a mistrial based, in part, on the ground that the prosecutor had improperly elicited testimony from defendant that he had refused to consent to a search of the apartment. The court denied the motion, concluding that defendant's refusal to consent was inconsistent with his earlier testimony that he did not live at the apartment and did not know illegal drugs were in the apartment.

In rebuttal, the prosecutor called one of the officers who had questioned defendant outside the apartment. The jury submitted the following question for the officer: "Did you or Officer Duncan specifically ask Mr. Chavez if you could search his apartment and what was his response?" Defendant's counsel objected on the grounds the question was not proper rebuttal and had been asked and answered previously and "goes to our right not to have ... the apartment searched." The prosecutor argued the answer would

contradict defendant's testimony that he had remained silent when the officer asked for his consent to search the apartment, and was therefore proper impeachment. The court overruled the objection. The officer answered: "Yes, we had. And his response was no, he did not want us to search his apartment."

In closing argument, the prosecutor argued that defendant refused to consent to a search of the apartment "because he knew that inside his apartment was half an ounce of cocaine." Defendant's counsel objected, and the court overruled the objection. The prosecutor went on to state, in discussing the concept of reasonable doubt, "It's also not reasonable the defendant would deny the officers consent to search the apartment if he didn't know the drugs were inside." In rebuttal closing argument, the prosecutor again alluded to defendant's refusal to consent to the search, stating, "It's intriguing that he would not allow [the police] up in the apartment when they asked him." Defendant's counsel moved for a mistrial based, in part, on these statements. The court denied the motion.

### B. Standard of Review

■ We review a trial court's evidentiary ruling for an abuse of discretion. *Dunlap v. People*, 173 P.3d 1054, 1097 (Colo. 2007); *People v. Stewart*, 55 P.3d 107, 122 (Colo. 2002). We also review a trial court's rulings on the scope of final argument and requests for a mistrial based on such argument for an abuse of discretion. *People v. Hoover*, 165 P.3d 784, 795 (Colo.App.2006); *People v. Richardson*, 58 P.3d 1039, 1046–47 (Colo. App.2002). "A trial court abuses its discretion only when its ruling is manifestly arbitrary, unreasonable, or unfair." *Stewart*, 55 P.3d at 122; *see also Hoover*, 165 P.3d at 795 (ruling on scope of final argument will be disturbed on appeal only if trial court grossly abused its discretion "resulting in prejudice and a denial of justice"). "A trial court necessarily abuses its discretion when it bases its ruling on an erroneous view of the law." *People v. Garcia*, 169 P.3d 223, 226 (Colo.App.2007).

■ Here, defendant preserved his due process argument by timely objecting to the prosecutor's questions to defendant, the officer's testimony, and the prosecutor's closing argument on the ground that it was improper to introduce evidence of, or comment on, defendant's exercise of his right to refuse to consent to a search. Thus, if we conclude defendant's constitutional right to due process was violated, we must reverse defendant's conviction unless the error was harmless beyond a reasonable doubt. *People v. Harris*, 43 P.3d 221, 230 (Colo.2002); *People v. Allen*, 2007 WL 2874428, — P.3d —, —— (Colo.App.2007). A trial error is harmless beyond a reasonable doubt "if there is no reasonable possibility that it affected the guilty verdict." *Arteaga–Lansaw v. People*, 159 P.3d 107, 110 (Colo.2007).

■ However, defendant did not preserve his objection that evidence of his refusal to consent to a search was irrelevant or that the danger of unfair prejudice substantially outweighed its probative value. Accordingly, we review that contention for plain error. *People v. Grant*, 174 P.3d 798, 807 (Colo.App. 2007). Plain error is obvious and substantial error that "so undermined the fundamental fairness of the trial itself … as to cast serious doubt on the reliability of the judgment of conviction." *People v. Miller*, 113 P.3d 743, 750 (Colo.2005) (quoting *People v. Sepulveda*, 65 P.3d 1002, 1006 (Colo.2003)).

### C. Due Process

In *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), the Supreme Court held that the prosecutor's and the trial court's comments encouraging and permitting, respectively, the jury to draw an inference of the defendant's guilt based on his decision not to testify violated the defendant's Fifth Amendment right not to incriminate himself. The Court reasoned that such comment "is a penalty imposed by courts for exercising a constitutional privilege. It cuts down on the privilege by making its assertion costly." *Id.* at 614, 85 S.Ct. 1229; *see also People v. Ortega*, 198 Colo. 179, 181–83, 597 P.2d 1034, 1035–36 (1979).

Defendant contends, relying on cases from other jurisdictions, that the rationale of *Grif-*

*fin* applies in the Fourth Amendment context: whether the prosecution seeks to introduce evidence of a defendant's silence or a defendant's refusal to consent to a search, admitting the evidence would penalize the exercise of a constitutional right. *See, e.g., United States v. Prescott*, 581 F.2d 1343, 1351–52 (9th Cir.1978); *Padgett v. State*, 590 P.2d 432, 434–35 (Alaska 1979); *State v. Palenkas*, 188 Ariz. 201, 933 P.2d 1269, 1279 (Ct.App.1996). *But see United States v. Dozal*, 173 F.3d 787, 794 (10th Cir.1999) (evidence of refusal to consent to a search is admissible if offered for a purpose other than to impute guilty knowledge; evidence was admissible to show dominion and control over premises where illegal drugs were found); *United States v. McNatt*, 931 F.2d 251, 256–58 (4th Cir.1991) (evidence of refusal to consent to a search was admissible as a fair response to the defendant's claim that Drug Enforcement Agency agent had planted cocaine in the defendant's truck); *Coulthard v. Commonwealth*, 230 S.W.3d 572, 582–84 (Ky. 2007) (evidence of refusal to consent to a search was admissible for rebuttal and impeachment of the defendant's claim of self-defense); Kenneth J. Melilli, *The Consequences of Refusing Consent to a Search or Seizure: the Unfortunate Constitutionalization of an Evidentiary Issue*, 75 S. Cal. L.Rev. 901 (2002) (arguing that the analogy to the Fifth Amendment right to remain silent is inapt and that use at trial of a defendant's refusal to consent does not unduly burden his Fourth Amendment right to privacy).

■ We conclude that evidence of defendant's refusal to consent to a search of the apartment was properly admitted during the People's rebuttal case to impeach defendant. Therefore, we need not decide whether such evidence is admissible as evidence of a defendant's consciousness of guilt.

■ The Supreme Court has made clear that *Griffin* does not stand for the proposition that it is always unconstitutional to make a defendant's exercise of a constitutional right costly. "[T]he Constitution does not forbid 'every government-imposed choice in the criminal process that has the effect of discouraging the exercise of constitutional

rights.'" *Jenkins v. Anderson*, 447 U.S. 231, 236, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980) (quoting in part *Chaffin v. Stynchcombe*, 412 U.S. 17, 30, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973)); *see also People v. Henry*, 195 Colo. 309, 315, 578 P.2d 1041, 1044–45 (1978).

■■ "In determining whether a constitutional right has been burdened impermissibly, it ... is appropriate to consider the legitimacy of the challenged governmental practice." *Jenkins*, 447 U.S. at 238, 100 S.Ct. 2124 (citing *Chaffin*, 412 U.S. at 32 n. 20, 93 S.Ct. 1977). Impeachment of a defendant who testifies at trial is a legitimate practice because it "may enhance the reliability of the criminal process." *Jenkins*, 447 U.S. at 238, 100 S.Ct. 2124.

■ Thus, in the Fifth Amendment context, it is constitutionally permissible to impeach a testifying defendant with his prior silence in many circumstances. For instance, a defendant may be impeached with (1) his constitutionally protected silence at a previous trial, *Raffel v. United States*, 271 U.S. 494, 499, 46 S.Ct. 566, 70 L.Ed. 1054 (1926); (2) his constitutionally protected silence before receiving *Miranda* warnings, whether that silence occurred before or after arrest, *Fletcher v. Weir*, 455 U.S. 603, 606–07, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982) (per curiam) (post-arrest); *Jenkins*, 447 U.S. at 238, 100 S.Ct. 2124 (pre-arrest); and (3) his constitutionally protected, post-*Miranda* advisement silence if relevant to rebut a claim asserted by the defendant at trial, *see United States v. Robinson*, 485 U.S. 25, 31–32, 108 S.Ct. 864, 99 L.Ed.2d 23 (1988); *Dunlap*, 173 P.3d at 1095–96.

The Court's holding in *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), another case on which defendant relies, that a defendant's post-*Miranda* advisement silence may not be used to impeach the defendant's trial testimony was explicitly based on the rationale that *Miranda* warnings implicitly assure the defendant that his silence will carry no penalty. *Id.* at 619, 96 S.Ct. 2240. Thus, where a defendant's silence is not induced by governmental action, such as the giving of a *Miranda* advisement, his silence may be used as impeachment. Even if the

defendant's silence was induced by governmental action, *Robinson* holds that the defendant may be impeached by his silence if it rebuts a claim asserted by the defendant at trial.

 It follows that the use of evidence of a defendant's refusal to consent to a search for impeachment purposes does not impermissibly burden the Fourth Amendment right to be free from unreasonable searches and seizures. *See Coulthard*, 230 S.W.3d at 582–84; *see also People v. Summitt*, 104 P.3d 232, 235 (Colo.App.2004) (recognizing that "[e]vidence that a defendant asserted a constitutional right may be admitted to impeach when the defendant testifies at trial"), *rev'd on other grounds*, 132 P.3d 320 (Colo.2006); *cf. McNatt*, 931 F.2d at 256–58 (evidence of the defendant's refusal to consent to a search of his truck was a fair response to his claim an officer had planted cocaine in his truck). Thus, where, as here, the defendant testifies at trial, evidence of the defendant's refusal to consent may be admitted for purposes of impeachment (if relevant for that purpose) and a prosecutor may comment on that refusal in closing argument.

Here, the prosecutor did not introduce evidence of defendant's refusal to consent to a search during the People's case-in-chief, nor did the prosecutor allude to that refusal in opening statement. However, after defendant denied living at the apartment on direct examination by his counsel, the prosecutor sought to introduce evidence of defendant's refusal in the course of cross-examining defendant, and such evidence was later introduced in rebuttal.

One inference a reasonable juror could draw from defendant's refusal to consent to a search (though not the only one) was that he had dominion and control over the apartment, *Dozal*, 173 F.3d at 794, and therefore evidence of that refusal was relevant to impeach him on that point. Accordingly, defendant's right to due process was not violated by admission of the evidence.

 The prosecutor's references in closing and rebuttal argument to defendant's refusal to consent to a search present a somewhat closer question, however. None-

theless, we conclude that any error was harmless beyond a reasonable doubt.

The prosecutor's references to defendant's refusal to consent to a search were made in the context of challenging defendant's assertion that he did not live in the apartment. Nonetheless, defendant contends that the prosecutor's statements invited the jury to infer that he refused to consent to a search because he knew he had illegal drugs in the apartment. Assuming that were the case, and that any such inference would be improper, we conclude, based on our review of the record, that the guilty verdict was surely unattributable to the error. *See Bernal v. People*, 44 P.3d 184, 200–01 (Colo.2002); *People v. Taylor*, 159 P.3d 730, 739 (Colo.App. 2006). The prosecutor's references to defendant's refusal to consent to a search were brief and the evidence against defendant was overwhelming. *See People v. Rodriguez*, 914 P.2d 230, 278–79 (Colo.1996); *see also People v. Dunlap*, 975 P.2d 723 (Colo.1999); *People v. Isom*, 140 P.3d 100, 105 (Colo.App.2005) (prosecutor's alleged improper comment must be examined in light of the entire closing argument). Accordingly, any error in the court's denial of defendant's objections and motion for a mistrial in connection with the prosecutor's argument does not warrant reversal of defendant's convictions.

### D. CRE 402 and 403

Relevant evidence is evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." CRE 401. All relevant evidence is generally admissible; irrelevant evidence is not. CRE 402. Even relevant evidence may be excluded, however, "if its probative value is substantially outweighed by the danger of unfair prejudice...." CRE 403.

"The Colorado Rules of Evidence strongly favor the admission of material evidence...." *People v. Agado*, 964 P.2d 565, 567 (Colo.App.1998); *accord People v. Czemerynski*, 786 P.2d 1100, 1108 (Colo.1990). Therefore, in reviewing the admission of evidence claimed to have been excludable under CRE 403, we "must afford the evidence the

maximum probative value attributable by a reasonable fact finder and the minimum unfair prejudice to be reasonably expected." *People v. Gibbens*, 905 P.2d 604, 607 (Colo. 1995); *accord People v. Ortiz*, 155 P.3d 532, 534 (Colo.App.2006).

Here, defendant testified on direct examination that he was not living at Apartment 211 on the date of his arrest, had not been to that apartment in six days, and did not know there were illegal drugs in the apartment. As we have concluded above, evidence that he refused to consent to a search of the apartment could give rise to a reasonable inference that he had dominion and control over the apartment on the date of his arrest, contrary to his testimony, and therefore it was relevant to impeach his testimony. It was for the jury to determine whether that inference should be drawn. *See Summitt*, 132 P.3d at 324 (in determining the relevancy of evidence, "it does not matter that [irrelevant] inferences may be equally probable; it is for the jury to determine what motivated the behavior"). Therefore, we conclude that admission of the evidence was not error.

### III. Evidence of Invocation of Right to Remain Silent

Defendant also contends the district court erred in allowing the prosecutor to elicit testimony from him on cross-examination that he remained silent when an officer asked if he would consent to a search of the apartment. He argues that he was penalized for exercising his Fifth Amendment right to remain silent, in violation of his right to due process. We are not persuaded.

As noted above, it is ordinarily improper for a prosecutor to use evidence of a defendant's post-*Miranda* advisement exercise of his right to remain silent as evidence of the defendant's guilt. *Doyle*, 426 U.S. at 617–19, 96 S.Ct. 2240; *see also Ortega*, 198 Colo. at 182–83, 597 P.2d at 1036–37; *Taylor*, 159 P.3d at 738.

Here, however, the prosecutor did not deliberately elicit testimony from defendant that he had invoked his right to remain silent. The prosecutor asked defendant leading questions intended to elicit testimony that he had refused to consent to the search.

This was proper because defendant testified at the pre-trial hearing on his motion to suppress, and he did not say he had invoked his right to remain silent. An officer testified at that hearing that defendant had refused to consent. Thus, the prosecutor could not reasonably have anticipated that defendant would say he had invoked his right to remain silent. And, the prosecutor did not argue to the jury that defendant's exercise of his right to remain silent was evidence of his guilt.

■ Because defendant volunteered that he had invoked his right to remain silent, and the prosecutor did not comment on it in the jury's presence, we do not perceive any violation of defendant's right to due process. *Cf. People v. Chavez*, 545 P.2d 716, 720–21 (Colo. App.1975) (not published pursuant to C.A.R. 35(f)) (no error in prosecutor's references in rebuttal closing argument to defendant's failure on the date of the offense to mention factual basis for defense relied on at trial where the defendant, not the prosecutor, elicited evidence of the defendant's exercise of his right to remain silent); *State v. Jennings*, 333 N.C. 579, 430 S.E.2d 188, 199–200 (1993) (no error where defendant's counsel, not prosecutor, elicited testimony that defendant exercised his right to remain silent); *Commonwealth v. Caputo*, 439 Mass. 153, 786 N.E.2d 352, 362 (2003) (same); *People v. Gray*, 166 Ill.App.3d 586, 117 Ill.Dec. 103, 520 N.E.2d 93, 97 (1988) (same).

### IV. Complicity Jury Instruction

Defendant next contends the district court erred in instructing the jury, over his objection, on complicitor liability because there was insufficient evidence to support such an instruction. We disagree.

■ When two or more people are involved in the commission of a crime, one charged as a principal may be tried and convicted as a complicitor. *People v. Pepper*, 193 Colo. 505, 508, 568 P.2d 446, 449 (1977); *see* § 18-1-603, C.R.S.2007; *People v. Osborne*, 973 P.2d 666, 669 (Colo.App.1998) (jury may be instructed on complicity where "the evidence ... establishes that two or

more persons were jointly engaged in the commission of a crime"). A person is liable as a principal for the behavior of another "if, with the intent to promote or facilitate the commission of the offense, he or she aids, abets, advises, or encourages the other person in planning or committing the offense." § 18–1–603; *see Bogdanov v. People*, 941 P.2d 247, 252 (Colo.) ("the complicitor must have the culpable mental state required for the underlying crime committed by the principal[, and] ... the complicitor must intend that his own conduct promote or facilitate the commission of the crime committed by the principal"), *amended*, 955 P.2d 997 (Colo. 1997); *People v. Bass*, 155 P.3d 547, 551 (Colo.App.2006) (same). Complicitor liability "may be established by reasonable inference from other established facts and circumstances." *Harris v. People*, 139 Colo. 9, 13, 335 P.2d 550, 553 (1959).

Here, defendant testified that he was allowing the other man to rent his apartment. The officers testified that an informant had alerted them to illegal drug activity at defendant's apartment building, and that they personally witnessed what they believed to be a drug transaction between defendant and the other man. Upon executing a search warrant, the officers found narcotics and narcotics paraphernalia in the apartment, some of which was in plain view.

■ Based on these facts, the jury could have found that defendant knew of the other man's possession of and intent to distribute controlled substances and that defendant intended to facilitate and facilitated that activity by allowing the other man to use defendant's apartment for such purposes. Accordingly, there was sufficient evidence to justify the complicity instruction.

## V. Refusal of Defendant's "Mere Presence" Instruction

Defendant also contends the district court erred in refusing to instruct the jury that "mere presence" at the scene of a crime is insufficient to establish a defendant's guilt. He argues that the court's refusal of this instruction may have misled the jury into believing he was a complicitor. We reject this argument.

■ It is within the sound discretion of the district court to determine whether additional jury instructions which properly state the law should be submitted. *People v. Renfro*, 117 P.3d 43, 48 (Colo.App.2004). Accordingly, a district court's exercise of discretion to refuse such an instruction "will not constitute reversible error absent manifest prejudice or a clear showing of abuse of discretion." *Id.*

■ Generally, a refusal to give a "mere presence" instruction does not constitute reversible error, so long as the principle is adequately conveyed by other jury instructions. *People v. Holmes*, 191 Colo. 477, 479, 553 P.2d 786, 788 (1976); *People v. Hernandez*, 829 P.2d 394, 398 (Colo.App.1991). A division of this court has held that "where proper instructions are given concerning the presumption of innocence, the prosecution's burden of proof, reasonable doubt, the essential elements of the offenses, and the definition of the requisite *mens rea*, the so called 'mere presence' instruction is necessarily encompassed by the instructions as a whole, and need not be given." *People v. Simien*, 671 P.2d 1021, 1024 (Colo.App.1983).

Here, the district court instructed the jury on all of the aforementioned principles, and therefore we conclude it did not err in refusing to give the jury defendant's "mere presence" instruction.

## VI. Refusal to Instruct the Jury on a Lesser Included Offense

■ Last, defendant contends the district court erred in failing to instruct the jury on the lesser included offense of possession of less than one ounce of marijuana. He argues he was entitled to such an instruction because there was a rational basis upon which the jury could have found that only the lesser amount of marijuana found on the plate in the cabinet belonged to him. We are not persuaded.

■ "A trial court is not required to give a lesser offense instruction requested by a defendant unless there is some evidence tending to establish the lesser offense and a rational basis upon which the jury may acquit

the defendant of the greater offense but convict him or her of the lesser." *People v. Gordon,* 32 P.3d 575, 578 (Colo.App.2001); *see* § 18–1–408(6), C.R.S.2007; *People v. Nhan Dao Van,* 681 P.2d 932, 934–35 (Colo. 1984). No such rational basis exists where the lesser offense instruction is inconsistent with the defendant's theory of defense. *People v. Bustos,* 725 P.2d 1174, 1175–76 (Colo. App.1986) (defendant was not entitled to a lesser non-included offense instruction that was inconsistent with his theory of defense that he did not know the substance in his possession was cocaine); *cf. People v. Villarreal,* 131 P.3d 1119, 1125 (Colo.App.2005) (defendant was not entitled to instruction on defense of voluntary intoxication where it was inconsistent with her theory of defense that she was not the person who attacked the victim).

Defendant's theory of defense was that he did not possess *any* of the drugs in the apartment. He claimed he was not living at the apartment, had not been in the apartment the night he was arrested, and did not know there were drugs in the apartment. Therefore, the district court did not err in refusing his lesser included offense instruction. *See Bustos,* 725 P.2d at 1175–76.

The judgment of conviction is affirmed.

Judge ROTHENBERG and Judge FURMAN concur.