The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Roger MOLLAUN, Defendant–Appellant.

No. 06CA1025.

Colorado Court of Appeals,
Div. V.

May 15, 2008.

Certiorari Denied Oct. 20, 2008.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2007.

John W. Suthers, Attorney General, Roger G. Billotte, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Rebecca R. Freyre, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge J. JONES.

Defendant, Roger Mollaun, appeals the judgment of conviction entered on jury verdicts finding him guilty of unlawful possession of a schedule II controlled substance, a class four felony, and possession of drug paraphernalia, a petty offense. We affirm.

## I. Background

The People charged defendant with unlawful possession of a schedule II controlled substance (specifically, methamphetamine), unlawful use of a schedule II controlled substance, and possession of drug paraphernalia arising out of a traffic stop of a vehicle in which defendant was a passenger. At trial, the district court dismissed the unlawful use count. A jury convicted defendant of the two remaining charges. The district court sentenced defendant to four years in the custody of the Department of Corrections on the conviction for unlawful possession of a schedule II controlled substance and fined him $100 on the conviction for possession of drug paraphernalia.

## II. Sufficiency of the Evidence

■ Defendant asserts that the evidence was insufficient to convict him of possession of a schedule II controlled substance, and therefore the district court erred in denying his motion for judgment of acquittal at the close of the prosecution's case. We disagree.

We review a district court's denial of a motion for judgment of acquittal based on allegedly insufficient evidence de novo. *Dempsey v. People,* 117 P.3d 800, 807 (Colo. 2005). The test we apply is "whether any rational trier of fact might accept the evidence, taken as a whole and in the light most favorable to the prosecution, as sufficient to support a finding of guilt beyond a reasonable doubt." *People v. McIntier,* 134 P.3d 467, 471 (Colo.App.2005) (citing *People v. Sprouse,* 983 P.2d 771, 777 (Colo.1999), and *Kogan v. People,* 756 P.2d 945, 950 (Colo. 1988)); *see also Dempsey,* 117 P.3d at 807. In applying this test, we must give the prosecution the benefit of every reasonable inference that might fairly be drawn from the evidence. Determinations of witness credibility as well as the weight given to all parts of the evidence are solely within the province of the fact finder. Accordingly, we cannot sit as a thirteenth juror and set aside a verdict simply because we might have reached a different conclusion. *McIntier,* 134 P.3d at 471–72.

Here, the prosecution introduced evidence that at the time of the traffic stop, defendant and the driver were in the car together. When the deputy approached the vehicle, defendant lit a cigarette, which the deputy testified individuals often do to mask the smell of illegal drugs or alcohol. Defendant was fidgeting and sweating. The deputy asked defendant if he could see the back of

his tongue. Defendant complied, and the deputy observed raised blisters, a common sign of methamphetamine use.

The deputy then asked the driver for his driver's license, vehicle registration, and proof of insurance. The driver retrieved documents from the glove compartment located in front of defendant. After looking at the documents, the deputy asked the driver to step out of the car. The deputy ran a check on the driver's license and registration, and asked him if he had anything illegal in the car. The driver said there was nothing illegal in the car. The deputy then asked the driver for permission to search the car. While the driver was considering whether to consent to a search, the deputy walked to the passenger side of the car and asked defendant if there was anything illegal in the car. Defendant responded by inviting the deputy to search the car. The deputy then returned to where the driver was standing. The driver shouted at defendant asking whether he had any marijuana in the car. Defendant got out of the car and said, "no." The driver then consented to a search of the car.

During the search, the deputy saw a red vinyl bag in the glove compartment that he had not seen earlier when the driver was retrieving documents. The deputy opened the bag, which contained methamphetamine and drug paraphernalia. The deputy also found a bag of methamphetamine on the floorboard behind the front passenger seat. The driver testified that the methamphetamine belonged to defendant, and that they had both smoked some before they were stopped.

Considering all of the evidence, and the inferences which reasonably can be drawn therefrom, in the light most favorable to the prosecution, we conclude that it was sufficient for a jury to convict defendant on the charge of possession of a schedule II controlled substance. The deputy found the methamphetamine close to where defendant was sitting, defendant had the opportunity to put the red vinyl bag in the glove compartment when the deputy was talking to the driver, and the driver testified the methamphetamine belonged to defendant. There-

fore, the district court did not err in denying defendant's motion for judgment of acquittal.

## III. Unruly Juror

Defendant also contends that the district court erred by not questioning a juror about her ability to deliberate fairly after learning that at one point in the deliberations the juror was emotionally upset and refusing to deliberate. Thus, defendant asserts, he was denied his right to a fair trial by an impartial jury. We are not persuaded.

On the morning of the second day of the trial, immediately prior to jury deliberations, the court discharged the alternate juror. Jury deliberations began some time before noon. At about 3:00 p.m., the court received a note from the jury foreman stating as follows:

> During the [course] of discussion, one of the jurors shut down, became isolated, and began to draw.

> Once confronted, she became emotional and declared "she didn't care anymore." We as a group said this was not an option, at which point she became emotional, stood up[,] declared herself bipolar and locked herself in the bathroom.

> She seem[s] capable of agreeing with the majority in order to avoid more conflict.

> What are the options available including the alternate juror[?]

The bailiff told the court that at some point the juror in question had locked herself in the bathroom, but had later come out and the jury had decided to take a break. According to the bailiff, after the break the juror seemed to be agreeable to going forward with deliberating. At about 3:30 p.m., the court discussed the matter with the attorneys and informed them of the note and related events. Defendant's counsel moved for a mistrial, to which the prosecutor objected.

At 3:40 p.m., the court sent a note back to the foreman stating:

> Please advise the Court whether anything has changed since the Court received this note. Specifically, please advise the Court as to whether all 12 of the jurors are able to proceed with deliberations.

Ten minutes later, the foreman responded: "At this point all 12 jurors seem to be fine and are proceeding."

Defendant's counsel renewed his motion for a mistrial. The court denied the motion. After the jury declared that it had reached verdicts, but before it rendered its verdicts, defendant's counsel asked the court to question the juror to determine whether she was "making her own fair and impartial decision." The court denied that request. The jury returned unanimous guilty verdicts. At defendant's counsel's request, the court polled the jury, and each juror replied in the affirmative to the following question: "Are those verdicts your verdicts and also the verdicts of the entire jury?"

Though defendant contends the court should have questioned the juror upon receiving the jury foreman's first note and after the jury indicated it had reached verdicts, defendant's counsel at trial did not request that the court question the juror after receiving the first note. Rather, at that point, defendant's counsel moved for a mistrial. Defendant's counsel did not ask the court to question the juror until after the jury indicated it had reached verdicts.

■ Therefore, while defendant preserved his claim of error with respect to the court's refusal to question the juror after being told the jury had reached verdicts, he did not preserve his claim that the court should have questioned the juror after receiving the first note. Hence, we may review that claim only for plain error. *People v. Kruse,* 839 P.2d 1, 3 (Colo.1992) (where a defendant fails to make a timely and sufficient objection during the trial, appellate review is for plain error); *People v. Anderson,* 183 P.3d 649, 652, 2007 WL 4336313 (Colo. App. No. 05CA0426, Dec. 13, 2007) (reviewing contention for plain error where the defendant did not make a contemporaneous objection on the same grounds as asserted on appeal); *People v. Mosley,* 167 P.3d 157, 159 (Colo.App.2007). Plain error is error that is both obvious and substantial, and which so undermined the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction. *People v. Miller,* 113 P.3d 743, 750 (Colo.2005).

■ Defendant contends, however, that error at either point in time would be "structural"—that is, an error of such a nature that the consequences thereof would be "necessarily unquantifiable and indeterminate, thus rendering the entire trial fundamentally unfair. . . ." *Bogdanov v. People,* 941 P.2d 247, 253 (Colo.), *amended,* 955 P.2d 997 (Colo. 1997); *accord People v. Dunlap,* 975 P.2d 723, 737 (Colo.1999); *see Neder v. United States,* 527 U.S. 1, 8, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (discussing the distinction between trial and structural constitutional errors, and noting that there is a strong presumption that constitutional errors are subject to harmless error analysis where "the defendant had counsel *and was tried by an impartial adjudicator*" (quoting *Rose v. Clark* 478 U.S. 570, 579, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986) (emphasis added) ). If an error is structural, we do not assess the likely effect of the error in light of the evidence presented: such errors are not susceptible of harmless error or plain error analysis. *Dunlap,* 975 P.2d at 736–37; *Bogdanov,* 941 P.2d at 253.

■ We need not decide whether the errors asserted by defendant are structural, or even if they are not, whether harmless error or plain error analysis applies. Based on our review of the record, considered in light of the governing law, we conclude that the district court did not abuse its discretion—that is, did not err—in refusing to question the juror either upon receiving the first note or upon being informed the jury had reached verdicts.

■ " 'The due process clauses of the United States and Colorado Constitutions guarantee every criminal defendant the right to a trial by an impartial jury.' " *People v. Dahl,* 160 P.3d 301, 304 (Colo.App.2007) (quoting *People ex rel. Faulk v. Dist. Court,* 673 P.2d 998, 1000 (Colo.1983)). "Due process is satisfied by 'a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen.' " *Id.* (quoting in part *Smith v.*

*Phillips,* 455 U.S. 209, 217, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982)).

"A court has inherent authority to use all powers reasonably required to protect its ability to function efficiently and to administer justice." *Id.* (citing *People v. Aleem,* 149 P.3d 765, 774 (Colo.2007)). "However, '[i]n Colorado, a verdict in a criminal trial must be unanimous,' and '[u]nanimity requires a free and untrammeled deliberative process that expresses the conscientious conviction of each individual juror.'" *Id.* (quoting in part *People v. Lewis,* 676 P.2d 682, 686 (Colo.1984)).

"When confronted with allegations of irregularity in the jury's proceedings, the trial judge has broad discretion 'to determine what manner of hearing, *if any,* is warranted.'" *United States v. Campbell,* 684 F.2d 141, 151 (D.C.Cir.1982) (quoting in part *United States v. Wilson,* 534 F.2d 375, 379 (D.C.Cir.1976) (emphasis added); *see also People v. Burnette,* 775 P.2d 583, 586 (Colo. 1989) (district court has "wide discretion in deciding whether a juror has become unable to continue to serve"). Thus, we will conclude that the court erred in this context only if we discern that it abused that discretion. A court abuses its discretion where its decision or action is manifestly arbitrary, unreasonable, or unfair, or based on an erroneous view of the law. *People v. Chavez,* 190 P.3d 760, 765, 2007 WL 4531719 (Colo.App. No. 05CA2392, Dec. 27, 2007); *People v. Garcia,* 169 P.3d 223, 226 (Colo.App.2007).

CRE 606(b) expressly applies to efforts to challenge the validity of verdicts with evidence pertaining to jury deliberations. That rule provides:

Upon an inquiry into the validity of a verdict ..., a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon [her] or any other juror's mind or emotions as influencing [her] to assent to or dissent from the verdict ... or concerning [her] mental processes in connection therewith. But a juror may testify about (1) whether extraneous prejudicial information was improperly brought to the jurors' attention, (2) whether any outside influence was improperly brought to bear upon any juror, or (3) whether there was a mistake in entering the verdict onto the verdict form. A juror's affidavit or evidence of any statement by the juror may not be received on a matter about which the juror would be precluded from testifying.

This rule, which applies in all civil and criminal cases, *Stewart v. Rice,* 47 P.3d 316, 321 (Colo.2002), paints with a very broad brush. Its "'exclusionary principle reaches everything which relates to the jury's deliberations, unless one of the exceptions applies.'" *Id.* (quoting Christopher B. Mueller, *Jurors' Impeachment of Verdicts and Indictments in Federal Court Under Rule 606(b),* 57 Neb. L.Rev. 920, 935 (1978)).

"The first half of the first sentence of Rule 606(b) represents the embodiment of the common law tradition of protecting and preserving the integrity of jury deliberations by declaring jurors generally incompetent to testify as to any matter directly pertinent to, and purely internal to, the emotional or mental processes of the jury's deliberations."

*Id.* at 321–22 (quoting Arthur Best et al., *Colorado Evidence: 2001 Courtroom Manual* 137 (2000)).

"CRE 606(b) has three fundamental purposes: to promote finality of verdicts, shield verdicts from impeachment, and protect jurors from harassment and coercion." *Id.* at 322; *accord Simpson v. Stjernholm,* 985 P.2d 31, 35 (Colo.App.1998); *see also* 3 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 6:20, at 115 (3d ed.2007) (stating that the policies behind Fed.R.Evid. 606(b), which is substantially similar to CRE 606(b), are protecting the privacy of jury deliberations and insuring that such deliberations remain free and frank) (*Federal Evidence* ). Because these purposes are implicated in the process of attempting to reach a verdict just as they are after a verdict has been reached, CRE 606(b) applies to inquiries into deliberations before a verdict is rendered. *People v. Rivers,* 70 P.3d 531, 536 (Colo.App.2002); *see also Federal Evidence* § 6:20, at 115 (observing that the policies underlying the rule "can apply as much to

preverdict questioning as post-verdict·questioning").

Defendant appears to concede that CRE 606(b) restricted the proper scope of the inquiry he contends the court should have made of the juror in question. He does not contend that either of the exceptions to the rule apply. Rather, he contends that, under the circumstances, the court was obligated to ask the juror the following questions:

1. Whether she had isolated herself because of the deliberations or because of personal problems.

2. Whether she could remain fair and impartial.

3. Whether she understood and could follow the court's instructions.

4. Whether she could decide the case based on her independent assessment of the evidence, rather than going along with other jurors merely to avoid conflict.

Some or all of these questions run afoul of CRE 606(b)'s prohibition against inquiry into a juror's emotional or mental processes. *See Garcia v. People,* 997 P.2d 1, 7 (Colo.2000) (district court impermissibly invaded the jury's deliberations by asking the jury foreperson whether a juror was refusing to follow the court's instructions or his oath as a juror); *Simpson,* 985 P.2d at 32–36 (district court erred in asking juror to explain why the verdict was not her verdict and in allowing another juror to testify about what the dissenting juror said in the jury room). We are not persuaded that the district court was compelled to ask any of these questions, or any others, under the circumstances of this case.

Here, after the court received the first note from the jury foreman indicating that the juror in question was refusing to deliberate, the court received additional information indicating that the juror had decided to participate in deliberations. First, the bailiff told the court that the juror in question had come out of the bathroom, the jurors, including the juror in question, had taken a break, and after the break the juror in question "seemed to be agreeable to going forward with deliberating." Second, following the break, the jury foreman informed the court that "all 12 jurors seem to be fine and are proceeding." The jury foreman provided this information in response to the court's question asking whether "anything had changed" since the first note and "whether all 12 of the jurors are able to proceed with deliberations." Thus, the jury foreman clearly was responding specifically to the problems he perceived and had previously brought to the court's attention. Because both notes came from the jury foreman, the surrounding circumstances indicate that whatever problems the foreman believed the juror's behavior had created no longer existed. Accordingly, the court could reasonably have concluded, in the exercise of its broad discretion, that the juror in question was deliberating and that there was no need for further inquiry.

In *Jacobson v. Henderson,* 765 F.2d 12 (2d Cir.1985), the defendant sought a writ of habeas corpus, claiming that his right to a fair trial had been violated because "during the course of jury deliberations, there was screaming, hysterical crying, fist banging, name calling, and the use of obscene language," and "[o]ne of the jurors allegedly threw a chair at another, then 'broke down,' crying and claiming he was a 'sick man.'" *Id.* at 14. Following the verdict, the defendant moved for a new trial on the basis of this alleged jury misconduct. The state court denied the motion without undertaking any inquiry beyond considering the affidavits attached to the motion describing the alleged jury misconduct. *Id.* The federal appellate court held that the state trial court had not erred, particularly in light of the fact the jurors had been individually polled after they returned the verdict. *Id.* at 15; *cf. Tanner v. United States,* 483 U.S. 107, 113–27, 107 S.Ct. 2739, 97 L.Ed.2d 90 (1987) (district court did not err in refusing to question jurors in response to juror affidavits alleging that jurors had consumed alcohol and illegal drugs during deliberations and slept during portions of deliberations; evidence of such alleged misconduct was barred by Fed. R.Evid. 606(b) and did not constitute evidence of an improper outside influence); *United States v. Gianakos,* 415 F.3d 912, 922–23 (8th Cir.2005) (court did not abuse its

discretion in determining that questioning of jurors who had allegedly engaged in premature deliberations was unnecessary); *United States v. Norton,* 867 F.2d 1354, 1364–66 (11th Cir.1989) (court did not abuse its discretion in failing to question juror who sent a note to the court during deliberations indicating that he wanted to acquit the defendant while the other jurors wanted to convict and felt that he was being subjected to "duress"; doing so would have risked reversible error); *People v. Ferrero,* 874 P.2d 468, 474 (Colo. App.1993) (affidavit of a juror stating that other jurors had yelled at her and that, because of an illness, she was coerced into voting to convict the defendant was inadmissible under CRE 606(b) ).

The facts in this case are similar to those in *Jacobson,* though not as extreme because there is no indication here that any other juror engaged in any abusive or threatening behavior. Further, as in *Jacobson,* the jurors in this case were polled after they returned their verdicts. The juror in question affirmed that the verdicts were hers, thereby indicating that she had deliberated and independently reached her own conclusions.

In arguing that the court was obligated to question this juror, defendant relies on two lines of cases. The first addresses jurors' exposure to extraneous prejudicial information. *See People v. Harlan,* 109 P.3d 616 (Colo.2005); *Harper v. People,* 817 P.2d 77 (Colo.1991); *Perry v. People,* 63 Colo. 60, 163 P. 844 (1917). The second addresses replacement of deliberating jurors with alternates. *See Garcia,* 997 P.2d 1; *Carrillo v. People,* 974 P.2d 478 (Colo.1999); *Burnette,* 775 P.2d 583. We conclude that those cases do not compel the result urged by defendant in this case.

■ The cases addressing jurors' alleged exposure to extraneous prejudicial information (one of the exceptions in CRE 606(b) ) simply do not involve the type of juror misconduct alleged in this case. Nor do they require inquiry of jurors whenever exposure to prejudicial information is alleged. In those cases, some inquiry *may* be necessary to determine whether extraneous prejudicial information was improperly brought to the jurors' attention and to assess the likely impact (applying an objective standard) of that information. *See Harlan,* 109 P.3d at 625; *Harper,* 817 P.2d at 80–84. However, where the court is able to determine from the nature of the allegedly prejudicial extraneous information and the surrounding circumstances that the information is not inherently prejudicial, the court does not abuse its discretion in failing to question the jurors. *See People v. Garcia,* 752 P.2d 570, 582–84 (Colo. 1988); *Ferrero,* 874 P.2d at 473. And, even where such inquiry is warranted, the court's inquiry must steer clear of the substance of the jury's deliberations and the jurors' mental processes. *See Harlan,* 109 P.3d at 625.

■ The cases concerning replacement of deliberating jurors with alternates are also inapposite. Where a deliberating juror is replaced, a presumption of prejudice to the defendant arises. *Garcia,* 997 P.2d at 5; *Carrillo,* 974 P.2d at 488; *Burnette,* 775 P.2d at 590. The presumption is rebuttable, however, and precedent makes clear that limited questioning of the juror to be replaced, the remaining jurors, and the alternate juror *may* be necessary to rebut the presumption.

This case does not present circumstances giving rise to a presumption of prejudice. Further, the juror replacement cases do *not* hold that questioning of the juror to be replaced is always required. Nor do we believe the particular holdings of those cases can legitimately be characterized as requiring inquiry of any juror alleged to be or to have been engaged in misconduct during deliberations.

■ Our holding is also supported by cases addressing the similar situation of alleged juror coercion. Consistent with CRE 606(b), courts may consider evidence of objective circumstances and overt coercive acts by members of a jury only if the alleged coercive acts rise to the level of continuous violent, abusive, and profane language and conduct threatening or amounting to physical violence against a juror. *See People v. Collins,* 730 P.2d 293, 302 (Colo.1986); *Wharton v. People,* 104 Colo. 260, 90 P.2d 615 (1939). If, however, the alleged coercive conduct does not rise to that level, a court should not receive evidence pertaining thereto and need

not question the jurors. *See, e.g., People v. Rudnick,* 878 P.2d 16, 21–22 (Colo.App.1993) (juror's testimony that she felt mentally abused by another juror who had treated her in a very physically and verbally aggressive, intimidating, demeaning, and belittling manner was excludable under CRE 606(b) ); *Ferrero,* 874 P.2d at 474 (juror's affidavit in which she said that other jurors had yelled at her and that, because of an illness, she felt coerced into voting to convict defendant was inadmissible under CRE 606(b) ); *People v. Black,* 725 P.2d 8, 8–9 (Colo.App.1986) (affidavits from jurors who said they voted to convict the defendant due to mental exhaustion brought on by coercion by other jurors were subject to CRE 606(b)'s prohibition against inquiry).

Similarly, in this case, the information provided to the court, considered in its entirety, did not demonstrate that the juror in question either continued to refuse to deliberate or was unable or unwilling to reach her own decision on the evidence. Accordingly, the court was not obligated to question the juror. Indeed, particularly in light of the fact the juror was polled, had the court questioned her, it would have run a substantial risk of violating CRE 606(b). *Compare People v. Barnard,* 12 P.3d 290, 294 (Colo.App.2000) (where juror responded, "Yes, under duress," when asked by the court whether the verdict was hers, court did not go beyond the limitations of CRE 606(b) in merely asking again whether the verdict was hers), *with Simpson,* 985 P.2d at 35–36 (where juror responded "no" when asked whether the verdict was hers, court violated CRE 606(b) in asking the juror why she had responded "no").

In sum, we conclude that under the particular circumstances of this case, the district court did not abuse its discretion in deciding not to question the juror after receiving the jury foreman's first note or after being told the jury had reach verdicts.

## IV.  Failure to Instruct the Jury

Defendant hypothesizes that the district court may have interpreted the jury foreman's first note as indicating that the jury was deadlocked, and asserts the district court erred in failing to give the jury a modified *Allen* instruction before allowing the jury to continue deliberations. We disagree.

Defendant's counsel did not request that the court give the deliberating jurors any additional instructions, and so it is questionable whether defendant may pursue this claim on appeal. In any event, defendant's hypothesis is merely speculative. We see nothing in the record indicating that the district court (or counsel for that matter) perceived the jury to be deadlocked or that the jury was in fact deadlocked.

## V.  Admissibility of Police Officer's Lay Testimony

■ Finally, defendant contends the district court erred by allowing a police officer, who had not been qualified as an expert witness, to testify regarding the appearance of defendant's eyes at trial in comparison to their appearance at the time of his arrest. We disagree.

■ We review a district court's evidentiary ruling for an abuse of discretion. *People v. Stewart,* 55 P.3d 107, 122 (Colo.2002); *People v. Caldwell,* 43 P.3d 663, 668 (Colo. App.2001).

■ "Where an officer's testimony is based not only on his or her perceptions, observations, and experiences, but also on the officer's specialized training or education, the officer must be properly qualified as an expert before offering testimony that amounts to expert testimony." *People v. Veren,* 140 P.3d 131, 137 (Colo.App.2005) (citing *Stewart,* 55 P.3d at 124); *see* CRE 701, 702. However, if an officer's opinion could be reached by an ordinary person based on a process of reasoning familiar in everyday life, it is admissible as lay opinion evidence. *People v. Rincon,* 140 P.3d 976, 982–83 (Colo. App.2005).

■ Here, the police officer testified that defendant's eyes at trial were not dilated and that defendant's pupils appeared "significantly smaller than they were when [the officer] was shining [his] light on them on [the date of the arrest]." Contrary to defendant's assertion, a witness does not need to be a drug

recognition expert to comment on whether an individual's eyes appear dilated. Because an ordinary person reasonably could come to have such an opinion based on a process of reasoning familiar in everyday life, we conclude the district court did not abuse its discretion in admitting the officer's testimony as lay opinion testimony.

The judgment is affirmed.

Judge GRAHAM concurs.

Judge ROY concurs in part and dissents in part.

Judge ROY concurring in part and dissenting in part.

I respectfully concur in part and dissent in part. I concur with the majority opinion on the sufficiency of the evidence issue (Part II). I dissent on the issue relating to the management of the jury (Part III).

The most common irregularity is the jury's receipt of evidence or information from outside sources. *See People v. Harlan,* 109 P.3d 616 (Colo.2005) (Bible); *People v. Wadle,* 97 P.3d 932 (Colo.2004) (extraneous information from the Internet); *Harper v. People,* 817 P.2d 77 (Colo.1991) (media reports); *Wiser v. People,* 732 P.2d 1139 (Colo. 1987) (dictionary and outside inquiry on source of instructions); *Perry v. People,* 63 Colo. 60, 163 P. 844 (1917) (media reports). In the most recent case, our supreme court stated: "These cases establish a two-part inquiry: first, a court makes a determination that extraneous information was improperly before the jury; and second, based on an objective 'typical juror' standard, makes a determination whether use of that extraneous information posed the reasonable possibility of prejudice to the defendant." *Harlan,* 109 P.3d at 624 (citing *Wadle,* 97 P.3d at 936–37).

A second line of cases deals with the failure or inability of a juror to deliberate. As the majority states, these cases deal primarily with the problems associated with substituting an alternate juror after deliberations have commenced—an option not available here. *Garcia v. People,* 997 P.2d 1 (Colo. 2000); *Carrillo v. People,* 974 P.2d 478 (Colo. 1999); *People v. Burnette,* 775 P.2d 583 (Colo.1989).

In *Carrillo,* a juror dissented from the verdict on one count during the polling of the jury prior to discharge. *Carrillo,* 974 P.2d at 482–83. The court ordered the jury to return to deliberations on all counts. Subsequently, the foreman of the jury sent a note to the court advising that the dissenting juror (1) was hearing impaired; (2) had not heard substantial testimony during the trial; (3) did not understand all the charges and instructions; and (4) had difficulty hearing the jury deliberations. *Id.* at 483. The court then conducted an in camera hearing with the parties and the juror during which the juror was afforded the opportunity to respond to the foreman's note. The juror stated that he had missed substantial testimony during the trial and was lip reading during deliberations. *Id.*

Based on the juror's statements, the trial court excused the juror and substituted an alternate who had not been discharged, after verifying with the alternate that she had obeyed the court's continuing instructions on juror conduct. The trial court then instructed the eleven remaining jurors to put aside their deliberations and begin anew with the alternate juror. The trial court had each juror verify that he or she could and would obey the instructions. *Id.*

With respect to the discharge of the juror, the supreme court stated:

Turning to the specific[s] of this case, we find that the potential for prejudice that arose when [the juror] was dismissed following the announcement of verdicts was overcome. Here, we may be confident that the cause of [the juror's] dismissal—his hearing problem—was not manufactured in response to undue pressure from the other jurors. During voir dire, [the juror] was forthcoming about his hearing problem, and his difficulty hearing was evident to such an extent that the prosecutor offered to stipulate to cause. When the jury sent out the note in order to bring this issue to the attention of the court, the court's inquiry of [the juror] revealed no evidence of undue pressure. Rather, [the juror's] forthright responses to the court's questions revealed that he missed signifi-

cant portions of the trial testimony and was unable to hear the other jurors during deliberations.

*Id.* at 492 (footnote omitted).

*Burnette* dealt exclusively with the problems associated with the substitution of the alternate juror after deliberations had commenced. Despite this limitation, it sheds some light on the necessity of an inquiry by the trial court. There, a juror called the judge early in the morning prior to the jury's recommencing deliberations and advised that she could not get to the courthouse because of inclement weather. *Burnette,* 775 P.2d at 585. At the time, both the relevant rule of criminal procedure and statute required that alternate jurors be discharged when the jurors retired to deliberate. The trial court then recalled the discharged alternate juror, who was permitted to join the deliberations. The resulting conviction was reversed because the trial court had failed to determine whether the alternate juror had formed opinions based on information received after discharge, did not determine his activities subsequent to discharge, and did not determine his present ability to deliberate. *Id.* at 590–91.

In addition, the trial court failed to determine whether the remaining jurors could begin deliberations anew, whether they were capable of disregarding their previous deliberations, and whether they would be receptive to the alternate juror's attempt to assert nonconforming views. These inquiries were necessary to rebut the presumption of prejudice to the defendant occasioned by the substitution of the alternate juror after deliberations had commenced. *Id.*

Finally, in *Garcia,* a case factually similar to this case, the foreman of the jury sent a note to the trial court stating that a juror refused to accept medical expert testimony, said he would not follow the instructions, and said that there was no evidence, presumably of guilt, and he would never change his mind. *Garcia,* 997 P.2d at 3. In response, the trial court sent a message telling the jury to review all the instructions with particular emphasis on the burden of proof, credibility of witnesses, and expert witnesses. *Id.* Other than requests for particular items of evidence, matters appeared to proceed normally.

Prior to adjournment on the first day of deliberations, the foreman sent a message asking for a copy of the juror's oath, which was provided. Early in the second day of deliberations, the foreman sent a message similar to the first and referring to the same juror. *Id.* at 4.

The trial court then interviewed the foreman, who stated that the juror (1) was violating the juror's oath; (2) was not following the instructions; and (3) was not deliberating. The foreman also reported that the juror had said to others, "I know how you are going to vote and I have a feeling this is going to be a hung jury." *Id.*

The trial court then interviewed the juror but only as to the hung jury comment, with which the juror did not agree. The juror was excused, and an alternate juror substituted after verifying that the alternate had not discussed the case since her dismissal and the remaining jurors were willing to begin deliberations anew. *Id.* at 5.

The supreme court reversed and, after reviewing *Carrillo* and *Burnette* with some emphasis on the substitution issue, discussed the trial court's inquiry:

Despite our ultimate holding in *Carrillo,* we expressed special concern about replacing jurors in cases in which "the juror excused was a lone holdout for acquittal": ["]Courts should particularly strive to avoid the practice of mid-deliberation substitution of a juror when the deliberation process has already progressed to the stage of announcing verdicts and where the juror who is the source of non-unanimity is the one who is subsequently excused.["] [*Carrillo,* 974 P.2d] at 491.

In such cases there is a danger that the court's act of dismissing the juror "will be interpreted as a comment on the merits of the case-in effect, that the juror is being excused because, in the court's opinion, the juror reached the wrong result." *Id.*

We find this very concern of particular force in this case. *Here, the trial court's inquiry was incomplete. The record fails to show a sufficient inquiry of [the juror]*

**422**

as to whether he was willing to follow the trial judge's instructions prior to deliberations or during the course of deliberations. Therefore, on this record, we are compelled to reverse the jury's verdict.

*Garcia,* 997 P.2d at 6 (emphasis added).

In *People v. Evans,* 710 P.2d 1167 (Colo. App.1985), a juror apparently slept during defense counsel's closing arguments. The trial court was so advised by the bailiff but made no inquiry and took no action prior to the verdict. After the verdict was rendered, the trial court commenced contempt proceedings against the juror. A division of this court reversed the conviction. *Id.* at 1168.

In this case, the jury was instructed: "The verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree to it. Your verdict must be unanimous." The juror's oath stated, among other things: "[Y]ou and each of you will well and truly try the matter at issue ... and render a true verdict according to the law and evidence."

A juror, in the midst of deliberations, expressed a lack of interest in the proceedings, announced that she would no longer participate in the deliberations, stated that she would agree to any verdict reached by a majority, and withdrew from the deliberations. The trial court was made aware of the event but conducted no inquiry to determine what had upset the juror, or whether she could and would return to the deliberations and fulfill her duties to independently determine the matter on the evidence presented and the applicable law. In addition, the trial court made no inquiry of the remaining jurors as to whether they could continue to deliberate with the juror.

In my view, the fact that deliberations resumed after a break and the foreman reported that "all 12 jurors seem to be fine and are proceeding" does not substitute for an inquiry, because while it may indicate appropriate deliberations, without more, it could equally indicate acquiescence by the juror. Further, I conclude that the jury poll after the verdict does not vitiate the need for the inquiry. The absence of an inquiry leaves the appellate court without a sufficient record, findings of fact, or conclusions of law to make the matter reviewable on appeal.

Therefore, I would reverse defendant's conviction and remand the matter for a new trial. Having so concluded, I would not address the remaining issues raised by defendant on appeal as they are unlikely to arise on retrial.