The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader.  The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
February 12, 2026

**2026COA7**

**No. 24CA1501, *People v. Martinez* — Criminal Procedure — Postconviction Remedies — Crim. P. 35(c)(3)(V) — Denial without Evidentiary Hearing — Based on the Pleadings**

A division of the court of appeals concludes that the phrase "based on the pleadings" in Crim. P. 35(c)(3)(V) allows a postconviction court, when determining whether to conduct a hearing, to consider at least those materials found within the files and record of the case that are either attached to or referenced in the defendant's Rule 35 motion (including any supplemental motion) or the parties' briefing on the motion.

COLORADO COURT OF APPEALS    **2026COA7**

Court of Appeals No. 24CA1501
City and County of Denver District Court No. 14CR564
Honorable Nikea T. Bland, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Kenny Lee Martinez,

Defendant-Appellant.

ORDER AFFIRMED

Division VII
Opinion by JUDGE TOW
Lum and Moultrie, JJ., concur

Announced February 12, 2026

Philip J. Weiser, Attorney General, Austin R. Johnston, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Erin Wigglesworth, Alternate Defense Counsel, Denver, Colorado, for
Defendant-Appellant

¶ 1    Defendant, Kenny Lee Martinez, appeals the postconviction court's order denying his Crim. P. 35(c) motion for postconviction relief without holding an evidentiary hearing.

¶ 2    In this opinion, we clarify what a postconviction court may consider before determining that it is appropriate to deny a Crim. P. 35(c) motion "based on the pleadings" and without holding a hearing, as contemplated by Crim. P. 35(c)(3)(V). We conclude that the phrase "the pleadings" in this context includes, at a minimum, materials that are found within the files and record of the case that are either attached to or referenced in the defendant's motion (including any supplemental motion) or the parties' briefing on the motion.

¶ 3    Because the postconviction court properly considered the files and record of the case that were attached to or referenced by the parties' briefing on the motion, and because we discern no other basis to disturb the court's order, we affirm.

I.    Background

¶ 4    Based on allegations that Martinez assaulted his wife with a candlestick in front of her nine-year-old son and thirteen-year-old niece, a jury convicted him of second degree assault, two counts of

1

child abuse, thirteen counts of violating a protection order. He was also charged with and convicted of possession of cocaine. He was acquitted of first degree assault and tampering with a victim. The district court imposed a controlling sentence of fourteen years in the custody of the Department of Corrections for second degree assault, with shorter concurrent sentences on the remaining convictions.

¶ 5    On direct appeal, a division of this court affirmed the judgment of conviction. *See People v. Martinez*, (Colo. App. No. 15CA0473, Mar. 30, 2017) (not published pursuant to C.A.R. 35(e)).

¶ 6    Martinez then moved for postconviction relief under Crim. P. 35(c), raising claims of ineffective assistance of counsel and juror misconduct. The postconviction court appointed counsel, who supplemented Martinez's postconviction motion. At the court's request, the prosecution responded to the supplemental motion. After reviewing the parties' briefing, the court denied Martinez's motion without a hearing.

## II. The Phrase "Based on the Pleadings" in Crim. P. 35(c)(3)(V)

¶ 7    Martinez contends that the postconviction court failed to apply the correct legal standard when denying his motion and supplement without a hearing. We disagree.

### A. Standard of Review

¶ 8    We review de novo a postconviction court's denial of a Crim. P. 35(c) motion without an evidentiary hearing. *People v. Davis*, 2012 COA 14, ¶ 6. We also review de novo a postconviction court's construction of a rule of criminal procedure, *id.*, and whether the court applied the correct legal standard, *Ronquillo v. People*, 2017 CO 99, ¶ 13.

¶ 9    We use principles of statutory construction when interpreting rules of procedure. *People v. Smith,* 2017 COA 12, ¶ 16. First, we read the language of the rule consistently with its plain and ordinary meaning, and if it is clear and unambiguous, we apply the rule as written unless doing so leads to an absurd result. *People v. Segura,* 2024 CO 70, ¶ 21.

### B. Rule 35 Procedures

¶ 10    Rule 35 of the Colorado Rules of Criminal Procedure affords every person convicted of a crime the opportunity for postconviction

review based on, among other things, a claim that the person's conviction or sentence was imposed in violation of the constitutions or laws of the United States or Colorado. *See People v. Turman*, 659 P.2d 1368, 1370 (Colo. 1983). When initially reviewing a Crim. P. 35(c) motion, a court may deny the motion without conducting an evidentiary hearing if "the motion and the files and record of the case" establish that the defendant is not entitled to relief. Crim. P. 35(c)(3)(IV). However, if the court does not deny the motion based on its review of the motion, files, and record of the case, the court must then refer the matter to the Office of the Public Defender (OPD)[1] if counsel is requested. Following the parties' briefing, the court must hold an evidentiary hearing on the motion unless the court finds that, "based on the pleadings," it is appropriate to enter a ruling without holding a hearing. Crim. P. 35(c)(3)(V); *see Smith*, ¶ 15.

---

[1]References to the OPD in Crim. P. 35(c)(3)(IV)-(V) include the Office of Alternate Defense Counsel (OADC) when the OPD has a conflict of interest. *See People v. Segura*, 2024 CO 70, ¶ 5 n.2. Likewise, references to the OPD in this opinion include the OADC.

## C. Analysis

¶ 11    Martinez contends that the phrase "based on the pleadings" in Crim. P. 35(c)(3)(V) confines the postconviction court's review to only the briefing on the motion, and not the files and record of the case. And because the court denied the motion by relying on information that Martinez contends was outside "the pleadings" — namely, transcripts and exhibits from the jury trial — he argues that the court committed reversible error.

¶ 12    As noted, in a postconviction court's initial review of a Rule 35 motion, subsection (c)(3)(IV) plainly allows the court to consider "the motion and the files and record of the case." Crim. P. 35(c)(3)(IV). But once the court determines that there is at least one claim of arguable merit, review progresses under subsection (c)(3)(V), which explicitly directs courts to "grant a prompt hearing on the motion unless, *based on the pleadings*, the court finds that it is appropriate

to enter a ruling containing written findings of fact and conclusions of law."  Crim. P. 35(c)(3)(V) (emphasis added).[2]

¶ 13    The central point of contention on this issue is whether the phrase "based on the pleadings" in Crim. P. 35(c)(3)(V) prohibits a postconviction court from considering the record (other than the pleadings) when determining whether to conduct a hearing on a Rule 35 motion that the parties have briefed.  We conclude that it does not.

¶ 14    We first note that the Colorado Rules of Criminal Procedure define "pleadings" as "the indictment or information or complaint, or summons and complaint, and the pleas of guilty, not guilty, not guilty by reason of insanity, and nolo contendere."  Crim. P. 12(a).

---

[2] Historically, Crim. P. 35(c)(3) instructed courts to consider "the motion and the files and record of the case" before deciding whether to grant an evidentiary hearing.  Crim. P. 35(c)(3) (2003).  However, in 2004 this provision of the rule was amended to include, as relevant here, subsections (c)(3)(IV) and (V).  *See* Rule Change 2004(02), Colorado Rules of Criminal Procedure (Amended and Adopted by the Court En Banc, Jan. 29, 2004), https://perma.cc/3TUK-PLAX.  Thus, while more recent cases often cite cases applying the pre-2004 version of the rule — including *White v. Denver District Court*, 766 P.2d 632 (Colo. 1988); *Ardolino v. People*, 69 P.3d 73 (Colo. 2003); and *People v. Venzor*, 121 P.3d 260 (Colo. App. 2005) — neither the older cases nor those relying on them provide any guidance on the scope of the phrase "based on the pleadings" in Crim. P. 35(c)(3)(V).

That definition is unhelpful here. It is rooted in pretrial, not postconviction, proceedings. Indeed, the title of Rule 12 is "Pleadings, Motions Before Trial, Defenses, and Objections." If that definition were to apply to Rule 35's "pleadings" reference, the postconviction court would not even be able to consider the postconviction motion itself. We decline to interpret the rule in such a preposterous fashion.

¶ 15    Martinez directs us to the Rules of Civil Procedure for guidance. He argues that a court's denial of a motion under C.R.C.P. 12(c) is analogous to the court's denial of a postconviction motion under Crim. P. 35(c)(3)(V) because, when a party moves under C.R.C.P. 12(c) for judgment on the pleadings, the court must deny the motion unless the matter can be resolved based only on information within the pleadings. But the civil rules are not necessarily informative either because, like Crim. P. 12, the definition of "pleadings" in the civil rules does not include motions or briefs. *See* C.R.C.P. 7(a).

¶ 16    Nevertheless, to the extent such an analogy is helpful, it works against Martinez's position. A court's consideration of the pleadings under C.R.C.P. 12(c) *includes* documents referred to in the

7

pleadings. *See Hannon L. Firm, LLC v. Melat, Pressman & Higbie, LLP*, 293 P.3d 55, 59 (Colo. App. 2011) ("[A] document that is referred to in or is attached to a complaint may be reviewed by the court on a motion for judgment on the pleadings without converting the motion to one for summary judgment."), *aff'd*, 2012 CO 61; *City of Boulder v. Pub. Serv. Co. of Colo.*, 996 P.2d 198, 203 (Colo. App. 1999) ("Documents referred to in a pleading are, in effect, incorporated in that pleading, and may properly be considered by the trial court in deciding whether to dismiss a claim on any grounds.").

¶ 17    We are also unpersuaded by Martinez's reliance on *Smith*. In that case, the division said that pleadings "do not encompass attachments to the parties' filings." *Smith*, ¶ 17. However, the attachment at issue in *Smith* was an affidavit from the prosecutor's investigator — in other words, evidentiary material that was *not* already part of the existing record.

¶ 18    But the division in *Smith* proceeded to clarify:

> We do not suggest that a party is precluded from attaching an exhibit to a pleading for the court's convenience or to corroborate factual assertions. But it is error for the court to render judgment on the pleadings based on

8

> factual allegations that are *outside the existing record* in the case.

*Id.* at ¶ 19 n.2 (emphasis added). Thus, *Smith* plainly stands for the proposition that documents already in the existing record *can* be considered on a Crim. P. 35(c) motion.

¶ 19 Moreover, Martinez's strict reading of subsection (c)(3)(V)'s "based on the pleadings" language would lead to an absurd result for three reasons.

¶ 20 First, Martinez's reading of the rule would allow litigants, intentionally or not, to assert facts in their briefs that are not supported by the record, given the court's inability to review the record itself to verify the factual assertion. By way of example, Martinez's appointed counsel asserted in the supplemental motion that trial counsel provided ineffective assistance by failing to object to a purportedly prejudicial statement on the serious bodily injury (SBI) form admitted as an exhibit at trial. In its response, the prosecution attached a copy of the original SBI form and the version of the SBI form that was admitted at trial, which showed that the statement had been redacted and was never provided to the jury. Under Martinez's reading of subsection (c)(3)(V), the court would not

be able to verify the accuracy of the factual assertion underlying the ineffective assistance claim without holding a hearing.

¶ 21 Second, our de novo review of the summary denial of a Crim. P. 35(c) postconviction motion permits affirmance on any ground supported by the record, even if the postconviction court did not consider or contemplate that ground. *See People v. Hamm*, 2019 COA 90, ¶ 23. Thus, under Martinez's proposed interpretation of subsection (c)(3)(V), an appellate court could consider the entire record on an appeal of a summary denial of a postconviction motion, but the postconviction court would be prohibited from doing so.

¶ 22 And finally, we cannot conceive of a logical reason why the parameters of review would shrink after all parties have had a full opportunity to present their positions to the court in writing. If, after thoughtful briefing from counsel on both sides of the issue, it is clear from the pleadings (and any reference to the record) that the defendant will be unable to prevail at a hearing, it would be absurd to require expending the parties' and the court's resources to conduct a futile exercise of holding a hearing.

¶ 23    Because Martinez's narrow interpretation of the phrase "based on the pleadings" produces an illogical and absurd result, we will not endorse it.

¶ 24    But what does the phrase "based on the pleadings" in subsection (c)(3)(V) mean?  Is it merely a codification of the party presentation principle?  *See Galvan v. People*, 2020 CO 82, ¶ 45 ("Under our adversarial system of justice, we adhere to the party presentation principle, which relies on the parties to frame the issues to be decided and assigns to courts the role of neutral arbiters of the matters raised.").  Is it nothing more than an acknowledgment that the court can decide the matter without a hearing if it finds that doing so is appropriate?  Is the true gravamen of the sentence in subsection (c)(3)(V) that includes the phrase "based on the pleadings" that the hearing must be prompt?  We leave these questions for another day.

¶ 25    On the circumstances before us, we need not decide the outer bounds of what the phrase "based on the pleadings" means.  We decide only that when a party's briefing references or attaches a portion of the existing record, the postconviction court can consider it when determining whether a hearing is warranted.

¶ 26     Having so concluded, we turn next to whether the postconviction court issued its ruling "based on the pleadings" under Crim. P. 35(c)(3)(V).  We conclude that it did.

¶ 27     The postconviction court's order relied only on the portions of the record cited in the parties' pleadings — namely, the facts the parties incorporated by reference into their pleadings — or attached to their pleadings.  For instance, the court referenced only the portions of the trial transcript that were cited in the prosecution's response when it found that Martinez's ineffective assistance claim regarding the warrantless search of his house lacked merit.  The court also relied on the prosecution's citation to the SBI exhibit provided to the jury (which, as mentioned, was also attached to the prosecution's response) to reject Martinez's claim that a prejudicial, unredacted SBI form was admitted at trial.  And the court rejected Martinez's claim that his counsel admitted ineffectiveness on the ground that his pleadings were "conclusory and [did] not have supporting details."  This finding did not rely on the record, although in resolving this claim, the court did speculate about what part of the record Martinez's allegation might be referencing.  But in

doing so, the court mentioned only the portion of the record that the prosecution cited in its response.

¶ 28 Accordingly, because the portions of the transcript that the postconviction court considered were referenced by the parties in their pleadings and were part of the files and record of the case, the court did not err by relying on them in denying Martinez's motion without a hearing under Crim. P. 35(c)(3)(V). And to the extent the court applied the initial review standard from subsection (c)(3)(IV), we conclude that the error was harmless because no hearing was necessary under the proper standard.

III. Request for Release of Juror Information

¶ 29 Next, we address and reject Martinez's claim that the postconviction court erred by denying his request for the release of juror information.

A. Additional Background

¶ 30 In May 2022, the postconviction court granted, in part, postconviction counsel's motion requesting juror information — namely, to allow access to a juror who had expressed hesitation about returning to deliberations. The motion alleged that, during deliberations, one of the jurors informed the court that she did not

13

"feel comfortable" returning to deliberations the next day. When pressed further, the juror explained that her concerns were "not really about whether or not we're reaching verdicts" but "more about the treatment of people in the room." The district court encouraged the juror to "take the evening, relax, and come back tomorrow," and if things did not improve, to notify the foreperson. The juror agreed. After the juror left the courtroom, defense counsel expressed concern that deliberations had become "coercive" and that the juror appeared "quite upset and was either crying or on the brink of crying." The following day, neither the jurors nor counsel brought additional concerns to the district court's attention, and the jury returned and rendered its verdicts. Based on postconviction counsel's allegations, the court agreed to allow the release of information for the juror and expressly indicated that "[o]nly after investigation into [this juror would] the Court reconsider further release [of information]."

¶ 31    The next month, Martinez's counsel alerted the postconviction court that counsel had received the juror's information and was "working to locate the correct person and to interview that person." Counsel requested, and the court granted, an additional forty-five

14

days to complete her investigation and file a supplemental petition. Two months later, counsel again requested additional time, noting that her investigator had located the correct person, "attempted contact, and [was] awaiting a response." The court again granted counsel's request.

¶ 32 In September, four months after the postconviction court's order granting access to the juror, postconviction counsel filed the supplemental postconviction motion. In it, counsel renewed her request for disclosure of additional juror contact information, noting that "[t]he defense investigator has located an out-of-state address for the juror and is still working to make contact." The court noted that the motion did "not provide any further evidence regarding the alleged juror misconduct" and instead "merely restate[d] the argument from the prior Motion for Access to Juror Information." Finding "no overt, objective coercion or misconduct by the jurors," the court "err[ed] on the side of protecting juror[s'] privacy" and denied counsel's request.

B. Standard of Review and Applicable Law

¶ 33 We review for an abuse of discretion a court's denial of a request for juror contact information. *People v. Bohl*, 2018 COA

15

152, ¶ 16.  A court abuses its discretion if its decision is manifestly arbitrary, unreasonable, or unfair, or if it misconstrues or misapplies the law.  *Id.*

¶ 34    Colorado Rule of Evidence 606(b) generally prohibits a juror from testifying about "any matter or statement occurring during the course of the jury's deliberations" or about "the effect of anything upon that juror's or any other juror's mind or emotions."  Likewise, a court may not receive a "juror's affidavit or evidence of any statement by the juror" concerning as much.  CRE 606(b).  This rule "strongly disfavors any juror testimony impeaching a verdict" and seeks to "promote finality of verdicts, shield verdicts from impeachment, and protect jurors from harassment and coercion." *People v. Harlan*, 109 P.3d 616, 624 (Colo. 2005).

¶ 35    Nevertheless, Colorado courts recognize an exception to CRE 606(b) for the possibility of juror misconduct.  *People v. Rudnick*, 878 P.2d 16, 21 (Colo. App. 1993).  If the alleged misconduct involves coercion between jurors, a court may consider evidence of "objective circumstances and overt coercive acts by other members of the jury," but it may not consider "the effect this conduct actually had on the minds of the jurors."  *Id.* at 21-22.

¶ 36    Note, though, that "[h]eated argument, even shouting, may be a normal part of the deliberative process of a jury." *People v. Vigil*, 718 P.2d 496, 502 (Colo. 1986).  So "courts may consider evidence of objective circumstances and overt coercive acts by members of a jury *only if* the alleged coercive acts rise to the level of continuous violent, abusive, and profane language and conduct threatening or amounting to physical violence against a juror." *People v. Mollaun*, 194 P.3d 411, 418 (Colo. App. 2008) (emphasis added).  Otherwise, a court may not receive such evidence and need not question the jurors.  *Id.* at 418-19; *see also Rudnick*, 878 P.2d at 21-22 (juror's testimony that she felt mentally abused by another juror who had treated her in a physically and verbally aggressive, intimidating, demeaning, and belittling manner was excludable under CRE 606(b)).

## C.    Analysis

¶ 37    Martinez agrees that the record did not include evidence that the jurors engaged in overt coercive acts.  Instead, he asserts that because the record did not rule out potential overt coercive acts that may have made the juror not want to return to deliberations the next day, the postconviction court's refusal to release additional

juror information impeded counsel's ability to investigate the possibility that such acts occurred.

¶ 38    We are not persuaded that the postconviction court's ruling was an abuse of discretion.  The court granted postconviction counsel's request to provide contact information for the juror central to this claim and agreed to consider the release of additional information "after investigation into [this juror]."  The court also granted both of Martinez's counsel's subsequent requests for additional time to contact and interview the juror.  Despite this, the supplemental motion did not provide the court with additional information beyond what had already been provided in the original motion.  Moreover, without additional evidence of juror misconduct, the allegations set forth in Martinez's motion were too speculative to support disclosure of juror information.  *See Bohl,* ¶ 22.  Indeed, the juror returned the next day and continued to deliberate, and no jurors subsequently reported any misconduct to the court or the parties.  *See id.* at ¶ 26.  Also, Martinez agrees that there were never any reports of continuous violent, abusive, and profane language or threats of physical violence against this juror or any other juror.  *See Mollaun,* 194 P.3d at 418.  And a juror's distress, by itself, does

not constitute material evidence that misconduct occurred. *See id.* at 414 (concluding that the district court properly declined a pre-verdict request to question a juror who became emotional and "locked herself in the bathroom" during deliberations but later affirmed her verdict); *see also People v. Newman*, 2020 COA 108, ¶ 13 (noting that, under CRE 606(b), a court need not grant a hearing unless "the party alleging misconduct has presented competent evidence" of impropriety (citation omitted)).

¶ 39 Therefore, given the lack of record evidence showing prejudice from jury misconduct, combined with CRE 606(b)'s fundamental purpose of protecting jurors and their deliberations, the postconviction court's decision against releasing juror contact information to the defense was not manifestly arbitrary, unreasonable, or unfair, or based on a misunderstanding of the law. *See Bohl*, ¶ 16. Accordingly, we discern no abuse of discretion by the court.

## IV. Disposition

¶ 40 The order is affirmed.

JUDGE LUM and JUDGE MOULTRIE concur.

19